**Charles L. Hawley, Trustee, Appellant, *v.* E. R. Griffith.**

*Practice, common pleas—Auditor's findings of facts.*

The general rule as to the weight that ought to be given to an auditor's findings of fact cannot be urged with much strictness or force where he has made no definite or detailed findings.

An auditor's findings of fact will not be considered as conclusive where it appears that his findings were largely based upon the assumption that the testimony of the defendant and his wife was so tainted with bias and interest as to make it incompetent, and this assumption wholly ignored the fact that the testimony so discredited was strongly corroborated by other evidence, including the circumstances of the case.

*Husband and wife—Presumption—Evidence—Gift.*

The mere fact of the reception of the wife's money by her husband makes him her debtor, and it requires no affirmative proof by the wife that he received it as a loan, and not as a gift, but he is not, as a general rule, chargeable with interest on it. If it is alleged afterwards by him or others that the money was received as a gift, and not as a loan, the burden is upon those who make such allegation to prove it, and on her, to show the agreement which entitles her to interest, but the agreement, in either case, may be implied from the circumstances attending the transaction.

A wife mortgaged her separate estate and loaned the proceeds of the mortgage to her husband. The interest on the mortgage was paid by the husband out of the money received by him for rents of her separate estate. There was no direct evidence that he agreed to pay interest on the money which he borrowed, but both husband and wife testified that he agreed to account for the rents. *Held*, that the husband was bound to pay interest on the loan.

Argued May 24, 1898. Appeal, No. 454, Jan. T., 1897, by plaintiff, from order of C. P. Northumberland Co., Sept. T., 1896, No. 56, sustaining exceptions to auditor's report. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Exceptions to auditor's report.

The facts appear by the opinion of SIMONTON, P. J., of the 12th judicial district, specially presiding, which was as follows:

The facts upon which the questions involved in this case arise have not been definitely found by the auditor, and hence it has been necessary for us to gather them from the testimony and evidence filed with his very meager report.

Some time in 1896, E. R. Griffith, the husband of Gwennie Griffith, becoming financially embarrassed, made two judgment notes in favor of Gwennie Griffith, his wife, for $4,000 and $2,000 respectively; one note in favor of Dunham, Buckley & Co. for $1,900; one in favor of H. B. Claflin & Co. for $400; and one in favor of a trustee for certain creditors for $7,000. Judgment was entered on all these notes in Northumberland county, except on that for $2,000, which was entered in Lackawanna county, in the order in which they have been stated above, and executions were issued on these Northumberland county judgments and were levied upon the personal property of the defendant, E. R. Griffith, in the same order, so that the execution issued on the judgment for $4,000 in favor of Gwennie Griffith, became the first lien upon the personal property of her husband and was succeeded in the order above stated by the other executions. His personal property was sold under these executions and the proceeds, amounting to $9,096.97, were paid into court, and an auditor was appointed to make distribution among the creditors.

It was claimed before the auditor that the judgment and the execution issued thereon in favor of Gwennie Griffith, the wife of the defendant, was fraudulent and void as to the creditors, and the auditor so decided and excluded it from the distribution. To this ruling exceptions were filed on behalf of the wife, and these are now to be passed upon.

The grandfather of Gwennie Griffith devised to her in fee, subject to a life estate in the widow of the testator, certain real estate, consisting of three houses and lots in the city of Scranton and a farm in Spring Brook township, Lackawanna county, and on the death of the widow in January, 1885, Gwennie Griffith became entitled to, and went into possession of, the real estate so devised.

Prior to 1889, Gwennie and her husband borrowed $500 on the security of her property, which was expended in repairing and remodeling one of the houses devised to her as above stated. In January, 1889, she sold the Spring Brook farm for $1,000. Her husband received this money and with it paid off the $500 mortgage, and applied the remaining $500 to payment on account of the cost of the repairs above stated, which in all amounted to $1,400, leaving a balance of $400 still unpaid.

From January, 1885, to May, 1896, E. R. Griffith received for rents of his wife's houses, $3,815.50, and paid out for repairs, taxes, water rates, sewer and paving assessments and insurance on his wife's property, including the balance of $400 due for repairing and remodeling, the sum of $2,589.21. E. R. Griffith and Gwennie, his wife, both testify that in receiving these sums, and making these payments, her husband was acting as her agent under an agreement made between them soon after the property devolved upon her that he would collect all the rents, pay out of the amount collected all expenses and account to her for the balance. This testimony was not contradicted by any witness, but the auditor declined to credit it for the reason, as stated in his report, " that the same is not sufficiently proved to the mind of the auditor to the degree of certainty required in like cases, and for the added reason that no statement was ever made, furnished or demanded by the wife or husband."

In January, 1890, Gwennie Griffith borrowed on mortgage upon her houses and lots, in which her husband joined, $3,500, which was paid to the husband by the lender. Two thousand seven hundred dollars of this amount her husband used to pay the purchase money of the house and lot bought by and conveyed to him, and the balance for other purposes of his own, and for years past the husband and wife have been living together in the house so purchased. The mortgage upon which this amount was raised is still due and unpaid, and the annually accruing interest thereon has been paid by the husband out of the rents of the wife's property received by him as above stated.

It does not appear from the evidence that Gwennie Griffith knew of her husband's financial embarrassment, or of the execution of the $4,000 and $2,000 notes, until after they had been made and entered of record.

Prior to January 16, 1896, E. R. Griffith had been in partnership with the persons for whose benefit the judgment for $7,000 above described was entered, and about that time he wrote to Dunham, Buckley & Co., of New York city, stating that he owed his former partners $3,800, when in fact he owed them double that amount. There is no evidence in the case from which it can be found that his wife knew of his having made, or intending to make, this statement, or was in any way connected with it.

The evidence, documentary and oral, proves beyond a doubt that the $3,500 received by E. R. Griffith in January, 1890, was the separate property of Gwennie Griffith, the wife ; and we may therefore adopt the language of Justice GREEN, delivering the opinion of the Court, in Wormley's Estate, 137 Pa. 101, at p. 108 : " All the evidence in the case established this fact, and there was not a particle of contradictory proof. The rule of law applicable in such a case is that the mere fact of the reception of the wife's money by her husband, makes him her debtor, and it requires no affimative proof by the wife that he received it as a loan, and not as a gift.  On the contrary, if it is alleged afterwards, whether by the husband's heirs or by his creditors, that the money was received as a gift, and not as a loan, the burden is upon those who make such allegation to prove it." Many cases sustaining this proposition are cited by the learned justice, and there is no room for controversy on this point. The auditor erred, therefore, in deciding that the $3,500 were received as a gift, and not as a loan by E. R. Griffith from his wife.

It is equally well settled that when the wife permits her husband to use her money without any stipulation as to terms, and continues to live with him, the presumption is that the interest was used to support the family, and she is entitled to a return of principal only, and not interest also.   But this is a presumption only which may be rebutted by evidence ; precisely as may be the presumption that the principal was received as a loan and not as a gift.   The principle is thus stated by Justice McCOLLUM in Hauer's Estate, 140 Pa. 420 : " It is well settled that a husband who receives any portion of the principal of his wife's separate estate, becomes, in the absence of an agreement controlling his reception of it, her debtor for the amount so received, but he is not, as a general rule, chargeable with interest upon it.   It lies on him to show the agreement which relieves him from the payment of the principal and on her to show the agreement which entitles her to interest, but the agreement, in either case, may be implied from the circumstances attending the transaction."   It is said in McGlinsey's Appeal, 14 S. & R. 64, by TILGHMAN, C. J.: "It is a general principle, that where the wife permits her husband to receive the profits of her separate estate, and particularly, where they live together, and the expenses of

housekeeping are paid by him, the presumption is that it was the intention of the wife to make a gift of the profits to the husband. And there is great reason for this presumption, because the husband being in the receipt of this money may be induced to live at a greater expense than he would otherwise have done, whereby the comforts of the wife, as well as his own, are increased. To call him to account, therefore, after the lapse of a number of years, might be ruinous, and would certainly be unjust. . . . The presumption in favor of the husband is, of course, like all other presumptions, liable to be rebutted by facts which take off its force." In Mellinger v. Bausman, 45 Pa. 522, Justice STRONG, delivering the opinion of the Court, says, speaking of money received by a husband from his wife : "If the money was hers, she was entitled to its use, and therefore to its interest. McGlinsey's Appeal, 14 S. & R. 64, was decided while the common law remained unchanged, and when the rights of a wife were secured by no such statute as we now have. And the circumstances of that case were peculiar. No doubt if a wife permits a husband to use her personal estate for the benefit of the family, without any agreement on his part to pay interest, he is generally not liable for it. But he may agree to pay interest, or the circumstances proved may show an intention to create the ordinary relation of debtor and creditor." In Kittel's Estate, 156 Pa. 445, it is said by Mr. Justice DEAN, delivering the opinion of the Court : " From the earliest times, both in this state and in England, before the enactment of any statute for the protection of the estates of married women, the rule in equity has been that the wife shall not charge her husband as debtor for arrears of income of her separate estate, in the absence of an agreement, express or implied, on his part to pay. The reason for the rule is to relieve from the necessity for accounts which in the ordinary conduct of domestic affairs would be so difficult of determination. Hence, in settlements between husband and wife, in the absence of proof to the contrary, equity presumes that interest money on the wife's separate estate which has been received by the husband has been expended by him with her consent for the support of herself and family. The rule is directly the reverse of this as to the principal. Neither the statute of 1848 nor that of 1887 has worked any change in this particular."

The auditor has not made any finding on the subject, but we have found from the uncontradicted evidence that the indebtedness secured by the mortgage for $3,500 against Gwennie Griffith's separate estate is still unpaid, and the interest for six years, amounting to nearly $1,300, has been paid by E. R. Griffith out of the money received by him for rents of her separate estate. There is no direct evidence that he agreed to pay interest on the $3,500, but there is the testimony of both the husband and the wife that he agreed to account for the rents. Waiving, however, for the present, the question of direct evidence, we consider simply the circumstances of the case. The wife mortgaged her separate estate to raise the $3,500. The debt thus contracted bears interest, which, according to the evidence, has been paid out of the income of the wife's estate. And if it had not been paid at all, the lien against her estate would have been increased by the amount of the interest. We think these circumstances rebut the presumption that the husband was not to be charged with interest; or, to speak more accurately, prevent the presumption from arising. To decide otherwise would amount to saying that where a wife raises money on mortgage of her separate estate, and lends it to her husband, we must presume that she intends to pay the interest on the debt thus created, without charging him with it, and thus in the course of years allow the principal to be absorbed, as it inevitably would be at the end of a certain number of years. From another point of view, the transaction might be treated as one in which the relation of principal and surety is established between the husband and the wife. The money raised on a mortgage of her separate estate, in which her husband joins, is received by him. He thus becomes in equity the principal debtor and she stands in the position of a surety. If then she, the surety, is called on to pay the annual interest, we are unable to see how the conclusion can be avoided that the principal debtor, her husband, becomes liable to her for this interest, or, which is the same thing, for the interest of the money received by him from her.

The reason, as stated in the cases, why the husband is not liable for interest or for income of the wife's separate estate received by him, is because it is presumed that it is expended by the husband for the benefit of the family, and that the wife

thus partakes in this benefit. In the present case, if the interest on the mortgage debt for the $3,500 was paid out of the rents which accrued from the wife's separate property, the rents could not have been expended in maintaining the family, and the presumption that this was the case would seem to be absolutely excluded. We do not see, therefore, how the conclusion can be avoided that E. R. Griffith is liable to his wife for the amount of interest paid during the six years, either as interest on the $3,500 mortgage debt, or as so much money received by him from the income of her separate estate to be accounted for by him. Both the husband and the wife testify that the rents were received by him under a distinct agreement between them that he should receive the rents as her agent and manage her estate for her, pay out of the rents received all necessary expenses and account to her for the balance. This testimony is not contradicted by any evidence in the case, and the fact that he used the larger part of the amount received for the benefit of her separate estate tends to corroborate this testimony; and we should have no hesitation in finding from the evidence and the circumstances that there was such an agreement. The auditor declined to credit their testimony on this point, stating as his reason for so doing " that the same is not sufficiently proved to the mind of the auditor to the degree of certainty required in like cases, and for the added reason that no statement was ever made, furnished or demanded by the wife or husband."

We do not think it is important to determine this question, as it is established beyond controversy that the husband received the $3,500 ; and we think it is equally certain that she is entitled to the six years' interest on this sum, either on the footing of interest or of a debt due from her husband to her to reimburse her for that amount of interest paid to the lender of the $3,500 ; or if not to either of these, then to the balance of the rents received after deducting the amounts paid by him out of the rents for the benefit of her separate estate ; and taken either way, the sum due would amount to more than the $4,000 judgment. It was decided in Meckley's Appeal, 102 Pa. 536, that a judgment honestly confessed by an insolvent man in favor of his wife to secure her for money loaned to him by her, out of her separate estate, is not fraudulent as against creditors, merely because it includes interest on the loan, when

there was in fact no agreement that the sum loaned should bear interest; and an auditor has no jurisdiction to inquire into the validity, as against creditors, of a judgment alleged to have been entered erroneously, or by mistake, for a sum more than was justly due.

Gwennie Griffith had an undoubted right to the principal sum of $3,500, and, as we think under all the facts and circumstances, to interest on this sum for six years; but even if this be not so, there is not a scintilla of evidence in the case to show that both she and her husband did not believe that she was honestly entitled to interest, or that it was fraudulently or collusively claimed in the judgment, and fraud is not to be presumed. As was said by the Court in Meckley's Appeal, supra : "If the parties had no fraudulent purpose or intent, then the judgment was not collusive, and the powers of the auditor over the judgment were at an end. If the wife had no right to interest, and the husband by mistake and in ignorance of the law embraced interest in the bond the judgement was erroneous, not collusive or fraudulent. . . . For mere mistake, as we have said, the judgment cannot be set aside by an auditor, as the question in a contest with strangers is, not whether the judgment is erroneous, but, whether it is fraudulent: Hauer's Appeal, 5 W. & S. 473." In Bergey's Appeal, 60 Pa. 408, THOMPSON, C. J., says: " We think the auditor, even if he might set aside the judgment for fraud, had no sufficient evidence in any of the considerations noticed, and certainly not in the fact that the judgment was far too large an amount by the sum of the interest included in it; that was an easy mistake to make, and was not a ground for setting aside the judgment." In Watch Co. v. Bedillion, 131 Pa. 385, the Court said: " We think the case comes clearly within the principle of Meckley's Appeal, 102 Pa. 536, that even if there was an honest mistake as to the amount actually due, the judgment would not be avoided, although confessed by a husband to his wife." And in Woods v. Irwin, 141 Pa. 278, Justice MITCHELL, delivering the opinion of the Court said "In Clark v. Douglass, 62 Pa. 408, this Court, through SHARSWOOD, J., said: that it was now, fortunately, well settled that creditors have no right to impeach a judgment on any other ground than collusion; and in Meckley's Appeal, 102 Pa. 542, it was held that a judgment honestly confessed to a wife

by an insolvent was good against creditors. If not for more than was due, it was not fraudulent, either in fact or in law, though there had been no agreement for interest on the money advanced by the wife, and such interest had been included in the judgment." And in Baird v. Ford, 152 Pa. 641, the Court said : " An auditor cannot set aside a judgment regular upon its face except on proof that it was recovered or maintained by collusion between the parties to it, for the purpose of defrauding the creditors of the defendant therein. He may receive evidence that it has been paid since it was obtained, but he cannot go behind it and correct an honest mistake of the parties in fixing its amount. These principles are so well settled and so familiar to the legal profession that a citation of the numerous decisions in our own state which illustrate and enforce them is not deemed necessary. It is sufficient to refer to the comparatively recent case of Meckley's Appeal, supra, in which these principles are considered and applied, and many of the cases sustaining them are cited."

But it is argued on behalf of the Charles L. Hawley trustee judgment that the findings of the auditor in their favor are conclusive. The Court said in Bedell's Appeal, 87 Pa. 510 : " When the report is upon facts directly found upon the evidence, we have frequently said we ought not to set it aside except for reasons which would induce a court to set aside a verdict." The auditor has not found the facts directly, but only inferentially, and the inferences drawn by him are affected by a manifest mistake as to the law. And if a jury on the evidence returned by the auditor had returned a verdict in favor of the Charles L. Hawley trustee judgment we would not hesitate to set it aside. We have said nothing as to the claim that there was an agreement by the husband to pay rent for the wife's house, in which they both lived for some years, but we think it unnecessary. Enough has been shown to establish the validity of the $4,000 judgment, and the question of the validity of the $2,000 judgment entered in Lackawanna county, is not before us. The auditor found without evidence that it is collectible. Whether this be so or not, we do not know ; nothing is claimed on it here and it is not a lien on the fund for distribution.

The exceptions to the auditor's report are sustained.

*Errors assigned* were in sustaining exceptions to auditor's report.

*A. G. Marr* and *A. A. Vosburg*, with them *Charles W. Dawson*, for appellant.—The judgments given by E. R. Griffith to his wife were presumptively fraudulent, and the burden of proof was upon the wife to show that they represented a valid indebtedness due and enforceable at the time of their entry: Wilson v. Silkman, 97 Pa. 509; 1 Black on Judgments, sec. 293; Billington v. Sweeting, 172 Pa. 161; Benson v. Maxwell, 105 Pa. 278; Tripner v. Abrahams, 47 Pa. 220; Earl v. Champion, 65 Pa. 191.

The auditor's report is like the verdict of a jury, and will not be set aside except upon the most manifest evidence of flagrant mistake: Miller's App., 30 Pa. 478; Hottenstein's App., 2 Grant, 301; McConnell's App., 97 Pa. 31; Bedell's App., 87 Pa. 510; Harris's App., 2 Grant, 304; Yohe's App., 55 Pa. 121; Prouty v. Prouty, 155 Pa. 112; Penn Bank's Est., 152 Pa. 65; Roddy's App., 99 Pa. 10; Ott v. Oyer, 106 Pa. 6; Smucker v. Penna. R. Co., 6 Pa. Superior Ct. 521.

Money received by a husband who was acting as agent for his wife, which was expended for his wife's benefit, does not make him her debtor: Johnston v. Johnston, 31 Pa. 450; Gleghorne v. Gleghorne, 118 Pa. 383; McMillin v. McMillin, 183 Pa. 91; Heck's Est., 11 Mont. Co. Law Rep. 66.

Where the money of the wife is invested by the husband with her consent, for her own comfort and that of her family, she cannot recover it from her husband or his estate; and the presumption of a loan arising from the receipt of the corpus of the wife's separate estate, by the husband, is rebutted by evidence showing that money so received by him was used at the request of the wife for the purchase and improvement of a home in which the wife enjoyed the fruits of her money by occupying it in common with her husband and their family for over seven years: Johnston v. Johnston, 31 Pa. 454; Hinney v. Phillips, 50 Pa. 382; Duncan v. Sherman, 121 Pa. 520; Billington v. Sweeting, 172 Pa. 164; Bergey's App., 60 Pa. 416; Dorman v. Turnpike Co., 3 W. 126.

The judgments confessed by E. R. Griffith to Gwennie Griffith were for $6,000, although both husband and wife knew that

this amount was largely in excess of any indebtedness from him to her, and the wife did not claim more than $4,000. Therefore these judgments, confessed by an insolvent man for more than was due, were prima facie fraudulent, and this presumption was not successfully rebutted: Clark v. Douglass, 62 Pa. 415.

*Charles L. Hawley* and *J. Simpson Kline*, for appellee.—The fact that a wife demands no statement, and does not press her husband for payment, is not ground for suspicion: Meckley's App., 102 Pa. 536; Lahr's App., 90 Pa. 507.

A partly good and partly bad judgment held by wife against husband, will be sustained as to so much as is good: Moore v. Dunn, 147 Pa. 359; Gicker's Adm. v. Martin, 50 Pa. 138; Howard Watch Co. v. Bedillion, 131 Pa. 385; Jamison's Est., 183 Pa. 219.

The parties to the confession of a judgment may testify that it was not given to hinder, delay or defraud creditors: Schwartz v. Schwartz, 5 York Leg. Rec. 35; Building Ass'n v. Hetzel, 103 Pa. 507; Werner v. Zierfuss, 162 Pa. 360; Munson v. Sweeting, 37 W. N. C. 349; Towers v. Hagner, 3 Wharton, 48; Kutz's App., 40 Pa. 90; Wormley's Estate, 137 Pa. 101; Daubert v. Eckert, 94 Pa. 255; Hamill's Appeal, 88 Pa. 363–367; Leonard's Estate, 9 Pa. 410; Gicker's Administrator v. Martin, 50 Pa. 142; Lasher v. Medical Press Co., 40 W. N. C. 19; Endlich & Richards on Married Women, secs. 207, 222; Wingerd v. Fallon, 95 Pa. 184; Tripner v. Abrahams, 47 Pa. 220.

Husband and wife may contract that he shall collect the rents of her property and account for them, and such contract is good in law even as against his creditors: Hauer's Est., 140 Pa. 420.

The rule that a master's finding of fact is entitled to the same consideration as a verdict of a jury, and that it will not be set aside unless clearly and palpably against the weight of the evidence, does not apply where the finding is the deduction from undisputed evidence, or from uncontradicted and credible evidence, because in such case he has no greater facilities for reaching a correct conclusion than the court has in passing upon the exceptions to his report: McConomy v. Reed, 152 Pa. 42; Grauel v. Wolfe, 185 Pa. 83.

If it was not a gift the husband was trustee for his wife and, whether he kept the money in his pocket or put it into real

estate which he had purchased, honesty required that he should account to her for it: Bergey's App., 60 Pa. 408; Young's Est., 65 Pa. 101; Seitz v. Seitz, 10 York Leg. Rec. 169; Martin's Est., 181 Pa. 378.

The husband is liable for interest, not only on the corpus of the wife's estate, but on the income thereof, whenever the circumstances imply his agreement to pay such interest; and actual payment by him of such interest raises the necessary implication that he agreed to pay the same: Grabill v. Moyer, 45 Pa. 530.

OPINION BY MR. CHIEF JUSTICE STERRETT, July 21, 1898:

The unsatisfactory condition of the auditor's report in this case is largely due to the fact that he made no definite or detailed findings of fact, except in his answers to requests presented by counsel; and some of these findings appear to be conclusions from other facts not shown to have been found by him. In such a condition of the record, as is here presented by the auditor's report, the general rule, as to the weight that ought to be given to an auditor's findings of fact, cannot be urged with much strictness or force. In addition to that, the auditor appears to base his findings largely upon the assumption that the testimony of the defendant and his wife " was so tainted with bias and interest as to make it incompetent." This assumption wholly ignores the fact that the testimony thus discredited by the auditor is strongly corroborated by other evidence, including the circumstances of the case.

The learned president of the twelfth judicial district, who specially presided at the hearing, realizing that the facts, upon which the questions involved in the case arose, had not been definitely or properly found by the auditor, deemed it necessary that he himself should " gather them from the testimony and evidence filed with the very meager report " of the auditor. A careful consideration of the learned trial judge's opinion has satisfied us as to the substantial correctness of his findings of fact therein set forth; and, upon the facts thus established, we think his legal conclusions are free from error. A detailed consideration of his findings, and conclusions of law is unnecessary. They are so fully and accurately presented in his opinion that for reasons there given by him, we are content to affirm the decree.

Decree affirmed and appeal dismissed at appellant's costs.