## Diffenbacher's Estate.

*Promissory notes—Collateral security—Pledge.*

The liability of the obligors on a judgment note is not changed by the fact that personal property is subsequently pledged to secure the payment of the note. The payee may prosecute his claim for the recovery of his debt and at the same time maintain his lien on the pledge.

Where one subscribes his name in the proper place at the bottom of a note his rights and liabilities are determined by the position in which his name appears on the instrument. Knowledge by the holder for value that the defendant is an accommodation maker does not give the latter the rights of a surety or change his liability from what it would be as a maker for value.

Argued March 13, 1906. Appeal, No. 22, March T., 1906, by American Tract Society, from decree of O. C. Cumberland Co., sustaining exceptions to report of auditor in estate of Calvin O. Diffenbacher, deceased. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Exceptions to report of George M. Hays, Esq., auditor.

SADLER, P. J., filed the following opinion:

Charles W. Minnich purchased an engine in the year 1903 from the J. J. Case Company for the sum of $1,125. A judg-

ment note was given for the same by the said parties, which matured September 1, 1903, and which, with interest to that date, amounted to $1,135.13. This sum was paid to the First National Bank of Mechanicsburg on September 21, 1903—Mr. Reeser paying his half of the note, apparently with his own funds, while the share of Charles W. Minnich was provided for by the latter making a loan of $562.50 from his father, and to secure the same, a promissory note was given for that amount payable to the order of Emanuel B. Minnich, and signed by Charles W. Minnich and Calvin O. Diffenbacher, and payable one day after date. The following being a copy of the said note:

"$562.50                  September 21, 1903.

" One day after date Charles W. Minnich promise to pay to the order of Emanuel B. Minnich, five hundred sixty-two and fifty one hundredth dollars, without defalcation, value received, with interest at four per cent per annum.

" And further we do hereby empower any attorney of any court of record to appear for we and with or without declaration filed, confess judgment against we for the above sum, with costs of suit, release of errors and without stay of execution, and with five per cent added as part of the judgment for attorney's fees for collection said fees to be liquidated damages, and become due and payable immediately after maturity of the note without demand of the debt proper, which is hereby waived. And we hereby waive the right of inquisition and extension, and agree to the condemnation of any real estate levied on by virtue of any writ of execution issued hereon, and agree to the sale of said real estate on fi. fa., and we hereby waive the benefit of the exemption laws of the commonwealth on any levy on real or personal property made by virtue of any execution hereon, and no benefit of exemption or stay law shall be claimed.

" Witness,             CHAS. W. MINNICH [Seal].

" L. G. FIRESTINE.     CALVIN O. DIFFENBACHER [Seal]."

It will be observed that Calvin O. Diffenbacher executed the note as one of the makers. " His rights and liabilities were fixed by the position in which his name appeared on the note," given to secure the loan made from Emanuel B. Minnich: Delaware County Trust, etc., Co. v. Haser, 199 Pa. 17.

To the offer of the note, made before the auditor to establish the claim of the holder, objection was made that it had been altered materially. The alterations complained of were the substitution of the word " we " for the letter " I " before the name Charles W. Minnich, and also in the power of attorney, attached to the note, providing for the confession of judgment. It does not appear from the testimony whether this alteration was made before Calvin O. Diffenbacher signed it or not.

The note is a judgment note, under seal, and is therefore not a negotiable instrument, in the strict sense of that term. The presumption, therefore, is that the change or alteration was made before delivery: Frey v. Wessner, 1 Woodward, 145.

But was the alteration a material one? Did it affect or change in any manner the liability or rights of Diffenbacher? In law the obligation was a joint and several one, and this is so whether the letter " I " had been changed to the word " we " or not. That the acts of assembly of April 6, 1830, and April 11, 1848, obliterated the common-law distinctions in Pennsylvania between instruments joint and those joint and several, in cases like the present, was decided long ago in Miller v. Reed, 27 Pa. 244. In that case, where the note had been signed by two persons, the words " or either of us " interpolated in the note after the word " we," and Justice WOODWARD in delivering the opinion of the court held, " That neither the moral nor legal effect of the instrument was changed, and that the alteration was consequently immaterial."

In Knisely v. Shenberger, 7 Watts, 193, the obligation sued on commenced with the words, " I do certify that I will go security, etc.," and it was signed by both the principal and the surety, and in sustaining a judgment recovered in the court below, in an action against the surety alone, the Supreme Court held, that, " Such an obligation might be treated as the several obligation of each person who signed it, or the joint obligation of all."

Also in Leith v. Bush, et al., 61 Pa. 395, where a bond was drawn in the name of one defendant, " I, William W. Bush, am held," etc., signed and sealed by him and four other defendants, it was held to be the joint and several obligation of the five parties, who executed the same.

Our Superior Court also, in Dodge v. Chessman, 10 Pa. Su-

perior Ct. 604, held that a promissory note, which stipulated that, "I promise to pay," etc., but executed by more than one person, might be treated as the several obligation of each person who signed it, or as the joint obligation of all." In this instance the suit was instituted against both drawers, and the plea was that they should have been sued separately.

To the same effect are Gardinier v. Sisk, 3 Pa. 326 ; Robertson v. Hay, 91 Pa. 242, and Snively v. Fisher, 21 Pa. Superior Ct. 56.

Where a note is written, " I promise to pay," etc., and there are many promissors, it is the several and joint promise of all : " Parsons on Bills and Notes, 251.

The changing of the word " I " to " we " in a joint note is not material, and recovery may be had on the altered instrument: Eddy v. Bond, 19 Maine, 461.

The alteration of the word " we " to " I " in the phrase " we guarantee " is not material, and recovery can be had : Kline v. Raymond, 70 Ind. 271.

The cases of Craighead v. McLoney, 99 Pa. 211, and Nesbitt v. Turner, 155 Pa. 429, cited by the auditor, and apparently relied upon by him as the basis of his determination, were both cases in which the alteration increased the liability of the drawer, in the one case, and the obligor in the other, and are, therefore, not pertinent, in the present contention. In the first of said cases the words " at " eight per cent interest, without the consent of one of the drawers, and in the other, in which the action was against the surety, on a cashier's bond, and the erasure and alteration changed the year from 1871 to 1873 ; the surety was a married woman in 1871 and became divorced in 1872, and the court left it to the jury to find, whether the obligee ratified or consented to the change in the date, after her discoverture. The finding being in her favor, judgment was entered on the verdict of the jury and affirmed in the Supreme Court.

The finding by the auditor that, " In April, 1904, Charles W. Minnich, then living with his father at East Petersburg, made an agreement that his interest in the machine should be held by his father as security for the payment of the $562.50 note, the note in controversy, and for any other money that he might owe his father. That Charles W. Minnich had no right to any

part of the engine until he had paid his father, for a one-half interest, which he has never done," and his fifth conclusion of law, based thereon, to wit: "Charles W. Minnich having put into his father, Emanuel B. Minnich's, hands, his one-half interest in said engine as collateral security for the said note, the said Emanuel B. Minnich was bound to account to the pledgor, his son, for the profits he derived from the pledge, the engine, and for the deterioration of the same, and in absence of proof of the definite amount of the profits, and deterioration of the pledge, the pledgee, Emanuel B. Minnich, cannot recover from the pledgor, Charles W. Minnich, or from anyone else, the debt for which the pledge was given," are not sustainable.

This finding of fact was not warranted by any testimony which we have been able to discover in his notes, and the legal conclusion based upon the same must therefore fall.

As before stated Emanuel B. Minnich purchased the interest of Reeser in the engine about September, 1903; he, therefore, was a joint owner with his son, and had the same right to the control and possession of it as the latter. When the engine was shipped, Emanuel B. Minnich resided at East Petersburg, Lancaster county, Pennsylvania, the place to where the same was consigned, and one-half of the freight bill was paid by Charles W. Minnich, the other joint owner (see p. 7, auditor's notes No. 2); the threshing business was manifestly carried on in Lancaster county, during the year 1904, by both C. W. Minnich and his father, E. B. Minnich, (see auditor's notes No. 2, p. 7).

The gross amount collected, from the threshing done, was from $200 to $250, and this was received by E. B. Minnich. As a matter of course from this gross income, it is reasonable that there would have to be deducted certain necessary expenses, so that the net profits received would not exceed or even be sufficient to discharge the obligation of Charles W. Minnich for the boarding he had contracted to pay. He had agreed to pay $4.00 per week from the 1st of April to the first of the year, a period of nine months, (see p. 9 auditor's notes No. 2. He still owes his father about $250.

"Q. How much is it? A. Oh, it is about $250. Q. The machine is security for that, is it? A. Yes. Q. So that he

would have that claim against anyone else who came in after you? A. Yes. Q. Was there anything in writing to that effect? A. No. Q. None? A. No. Q. Are you positive of that? A. Yes. Q. Have you not signed any agreement turning over to him your share in this machine? A. No. Q. Think? A. No, sir. Q. You never made a statement to that effect in the presence of anyone? A. No. Q. Was anyone present except you and your father when you made the agreement that the machine was security for what you owed him? A. No. Q. What date did you make that agreement? A. I don't know. Q. Think? A. Near April 1, 1904. Q. That was before you owed him the money? A. No it was not. Q. Didn't you say you made an agreement of $4.00 a week, when you went there last year, April 10? A. Yes. Q. Now you made this agreement April 1? A. Yes. Q. Before the debt was incurred, he was to hold that machine as security for anything you were to owe him? A. Yes. Q. And then he collected everything that came in from the working of the machine and gave you nothing? A. Yes."

(See p. 10, testimony C. W. Minnich, notes of auditor No. 2.).

This was the testimony on which the auditor's finding must have been mainly based.

It thus appears that not only was the auditor in error in stating that the engine was held as security for the note of $562.50, but that the only proof given, as to the purpose the machine was held, was that it was for an entirely different item of indebtedness, which the son was obligated to pay the father.

The authorities, therefore, cited by the auditor, in support of the principle that the profits derived from a pledge, and the deterioration of the same, while in the hands of the pledgee, should be considered in the present inquiry, have no relevancy.

Exceptions sustained.

*Error assigned* was the decree of the court.

*E. M. Biddle, Jr.*, with him *R. M. Henderson*, for appellant, cited: Thompson v. Patrick, 4 Watts, 414; Stewart v. Bigler's Assignees, 98 Pa. 80; Krantler v. U. S. Bank, 1 Phila. 213;

McManus v. Sweatman, 22 W. N. C. 54; Simes v. Zane, 1 Phila. 501; Nat. Bank v. Baeder Glue Co., 164 Pa. 1; Forrest v. Buchanan, 203 Pa. 454.

*S. B. Sadler*, with him *C. S. Brinton*, for appellee, cited: Painter v. Rowley, 1 W. N. C. 116; Gerlach v. Cammerer, 2 W. N. C. 67; Price v. Glass, 2 W. N. C. 472; Smith v. Bunting, 86 Pa. 116; Beale v. Bank, 5 Watts, 529; Erie Bank v. Smith, Randolph & Co., 3 Brewster, 9; Ginrich v. Hamaker, 5 W. N. C. 488; Craddock v. Armor, 10 Watts, 258; Liebig Mfg. Co. v. Hill, 9 Pa. Superior Ct. 469; Bowman v. Kistler, 33 Pa. 106; Judd's Estate, 9 Kulp, 326; Hughes's Estate, 13 Pa. Superior Ct. 240.

OPINION BY HENDERSON, J., April 23, 1906:

After a careful examination of the evidence we are of the opinion that the court reached a correct conclusion in regard to the evidence offered in relation to the claim of the appellee. Taking the whole testimony of Charles Minnich into consideration his evidence is to the effect that his interest in the engine was turned over to his father in April, 1904, for a board bill due or to become due. The note on which the appellee made his claim was given September 21, 1903, and the decedent was one of the makers. His solvency does not seem to have been doubted and there was no apparent reason why additional security should have been required. The auditor's finding on this question was rather an inference than a conclusion based upon evidence and is within the rule stated in Fiscus's Estate, 13 Pa. Superior Ct. 615; Hindman's Appeal, 85 Pa. 466; Hawley v. Griffith, 187 Pa. 306, and kindred cases.

The case does not turn, however, upon the question whether Charles Minnich's interest in the engine was pledged to his father for more than the claim for board or not. If there had been a pledge as security for the note that fact would not defeat the right of the payee to recover. The liability of the obligors on the note was not changed by the fact that personal property was pledged to secure its payment. The contract or pledge, if it existed, was made long after the note was given and was entirely distinct from the liability on the note. The existence of the pledge would not deprive the holder of the

note of his right of action on the contract. He is not bound to apply his securities in the first instance. Geddis v. Hawk, 1 Watts, 280. A pledgor cannot offset the pledge against the principal contract unless the pledgee has converted the property. The payee may prosecute his claim for the recovery of his debt and at the same time maintain his lien on the pledge: Lord v. Ocean Bank, 20 Pa. 384.

It is further to be observed that in the obligation which the decedent executed he was a joint maker with Charles Minnich and, therefore, primarily liable for the debt. Where one subscribes his name in the proper place at the bottom of a note his rights and liabilities are determined by the position in which his name appears on the instrument. He may be in fact an accommodation maker but he is not thereby relieved from his liability to the payee. He has bound himself directly for a lawful consideration to make the note good. " An accommodation note is a loan of the credit of the maker to the payee which he may use as freely and with the same effect as to the maker as he could use a note given for the full consideration." Penn Safe Deposit & Trust Co. v. Stetson, 175 Pa. 160. Where one signs a note as maker although merely for the accommodation of the payee he thereby obligates himself as a principal and is not permitted to allege subsequently that he was a surety, merely. Knowledge by a plaintiff who is a holder for value that the defendant is an accommodation maker does not give the latter the rights of a surety or change his liability from what it would be as a maker for value: Delaware County Trust, etc., Co. v. Haser, 199 Pa. 17. Diffenbacher's liability was that of a principal debtor and his estate is chargeable with the amount due on the note. The rights of his legal representative against his co-obligor can be established in an appropriate proceeding. We need not discuss the question of the liability of the pledgee for depreciation in the value of the pledge. The property was a traction engine. The pledgee had a half interest in it. It was in his possession and he had a right to use it. There is no evidence to show that it was improperly used or subjected to any greater depreciation than was natural, taking into consideration the uses for which it was intended. If the joint owner has not accounted for the share of the business to which Charles Minnich was entitled in 1904 he may be called upon to account

by the pledgor, but neither the latter nor the estate of the decedent is entitled to a stay of proceedings on the note pending an adjustment of such an account.

The assignments are overruled and the decree is affirmed.