## Shapiro, Appellant, *v.* Shapiro, Appellant.

Argued November 16, 1965. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused November 29, 1966.

*I. Raymond Kremer,* with him *Morton Witkin* and *Marvin D. Weintraub,* for plaintiff.

*Edwin P. Rome,* with him *Morris L. Weisberg, Ruth B. Rosenberg,* and *Blank, Rudenko, Klaus & Rome,* for defendant.

OPINION BY MR. JUSTICE JONES, November 15, 1966:

This appeal presents another in a long series of lawsuits which have involved, directly or indirectly, the determination of the respective rights of a wife and husband in certain valuable property, both real and personal,[1] these lawsuits having been triggered by the emergence of marital discord between the wife and husband who, after four decades of married life, finally separated and have lived apart since January 1962.

On January 25, 1963, Edna Shapiro (wife) instituted an equity action in the Court of Common Pleas No. 6 of Philadelphia County against Samuel Shapiro (husband). In this action, the wife sought a retransfer to her from her husband of certain property: (a) 1138 8/9 shares of the common stock of Keystone State Theatre Company (Keystone); (b) 250 shares of the common stock of Welford Corporation (Welford); (c) 40 shares[2] of the common stock of Arcadia Theatre Company (Arcadia); (d) realty located at 118-122 South 16th Street, Philadelphia (16th Street property); (e) certain personalty and art objects. The wife also

---

[1] In our Court see: *Shapiro v. Shapiro,* 415 Pa. 503, 204 A. 2d 266; *Arcadia Theatre v. Sablosky,* 418 Pa. 34, 209 A. 2d 375; *Shapiro v. Shapiro,* 419 Pa. 607, 213 A. 2d 681; *Shapiro v. Shapiro,* 419 Pa. 618, 215 A. 2d 902; *Arcadia Theatre Co. v. Sablosky,* 421 Pa. 631, 220 A. 2d 338.

[2] Actually now only 30 shares as the result of litigation which resulted in a judgment in favor of Bennard Shapiro—son of Edna Shapiro by a previous marriage who was later adopted by Samuel Shapiro—awarding him 10 shares of Arcadia stock. (*Shapiro v. Shapiro,* 415 Pa. 503, 204 A. 2d 266).

sought an accounting of property, whether finally determined to belong to her solely or as a tenant by the entireties, a partition of certain realty known as Felton Theatre (Felton), held as tenants by the entireties by the wife and husband, and an accounting of income from Felton allegedly diverted by the husband to his own use. In essence, what the wife sought was: (1) that the husband be declared a constructive trustee for the wife of certain properties; (2) that, where property was finally determined to be held as a tenancy by the entireties, such property be partitioned; (3) that, where appropriate, the husband be required to account for his stewardship of the properties; (4) that, if the property be declared solely owned by the wife, the husband be required to transfer such property to the wife.

Upon issue joined, a trial was held before Judge DOTY of the Court of Common Pleas No. 2 of Philadelphia County. After a trial—which consumed 18 days and resulted in a printed record of approximately 3500 pages—Judge DOTY entered a decree nisi which (1) directed the husband to transfer to the wife in her name alone the Keystone and Welford common stock, (2) directed the husband to convey the 16th Street property —held as a tenancy by entireties—to the wife in her own name and (3) appointed Theodore Voorhees, Esq., a member of the Philadelphia bar, as a receiver to (a) state an accounting of all dividends, rentals and other receipts due to the wife in regard to Keystone, Welford, the 16th Street property, Felton and Arcadia, (b) inventory for the court the personalty claimed by the wife, (c) take possession of all properties held by husband and wife as tenants by the entireties, including the bank accounts, and (d) take possession and control of and vote the Arcadia stock held in the names of the wife and husband.

Both parties excepted to this decree. These exceptions were dismissed by a court en banc, consisting of

Judges DOTY and SPORKIN, and a final decree was entered.

The husband has appealed from that decree (No. 288 January Term 1965) on the grounds that the chancellor erred: (a) in finding that the husband diverted entireties' income to his own exclusive use when the record shows he applied such income for the wife's support; (b) in finding that the wife was sole owner of Keystone and Welford stock and the 16th Street property and a tenant by the entireties of the Arcadia stock since the evidence was legally insufficient to support such finding; (c) in ordering the transfer to the wife, an accounting and the appointment of a receiver for properties held by the entireties; (d) in not holding the wife guilty of laches and that the action was barred by the five year statute of limitations relating to constructive trusts of realty.

The wife has appealed from that decree (No. 343 January Term 1965) on the grounds that the chancellor erred: (a) in failing to declare the husband a constructive trustee for the wife of the Arcadia stock; (b) in failing to grant partition of the entireties' properties; (c) in appointing a receiver; (d) in imposing the costs of the litigation *equally* on wife and husband.

The parties to this litigation were married in Philadelphia in 1922 and lived together there until marital difficulties resulted in their separation in January 1962. They have two sons: Merton, a son of this union, and Bennard, the wife's son, by a previous marriage, who was adopted by the husband. The husband migrated to this country with his parents when he was seven years of age. At the time of his marriage he (then 21 years old) was in the real estate business and of modest means. The wife's family was in the business of manufacturing Fischman soda fountains. The wife's mother, Ida Fischman, was once very well to do although at her death she left practically no estate.

For some time during the latter part of her life Mrs. Fischman lived with the parties to this controversy.

The seeds of this litigation were planted over a number of years through various financial transactions purportedly made to affect the parties' credit standing and to avoid certain tax consequences. However, the fruit proved bitter when the parties separated amid tangled and highly complicated financial affairs.

We have before us a voluminous record upon a study of which and, after an opportunity to see and observe the witnesses as they testified, the chancellor made certain findings of fact which were approved by the court en banc. Ordinarily, such findings are controlling upon an appellate court and a decree based upon such findings will not be reversed in the absence of a showing of an abuse of discretion or a capricious disbelief of the evidence or a lack of evidentiary support on the record for such findings: *Lanning Will,* 414 Pa. 313, 316, 200 A. 2d 392 (1964) ; *Sterrett v. Sterrett,* 401 Pa. 583, 587, 166 A. 2d 1 (1960) ; *Brown v. Gresh,* 402 Pa. 35, 37, 165 A. 2d 629 (1960). However, where the conclusions reached by the chancellor, either of law or ultimate fact, are no more than the chancellor's reasoning from the underlying facts, such conclusions are reviewable. As the husband's counsel aptly states:[3] "Where, moreover, the underlying facts themselves are not in esse but are a matter of inference and deduction the chancellor's findings are 'especially' reviewable: Coffin v. Old Orchard Development Corp., 408 Pa. 487, 490-91 (1962) ; Sendick v. Matvey, 391 Pa. 286, 290-91 (1957). *The question before this Court is whether the evidence is sufficient to support the chancellor's conclusions*: Schwartz v. Urban Redevelopment Authority of Pittsburgh, 416 Pa. 503, 508 (1965) ; Davis v. Sulcowe, 416 Pa. 138, 141 (1964)." (Emphasis added).

---

[3] Husband's brief, p. 34.

"The law looks with such extreme jealousy upon all transactions in which a husband deals with the estate of his wife that it will, upon very slight evidence, cast upon him the burden of showing that he has derived no advantage from such transactions, and whenever it appears that by any circuity he has obtained the legal title to any part of her estate without her free consent affirmatively shown, it will declare him a trustee: Darlington's Appeal, 86 Pa. 512.": *Nichols v. Nichols,* 149 Pa. 172, 176, 24 A. 194 (1892). See also: *Hawley v. Griffith,* 187 Pa. 306, 41 A. 30 (1898); *DeBernard v. DeBernard,* 384 Pa. 194, 120 A. 2d 176 (1956). The instant record portrays not simply the normal display of confidence of a wife in her husband but of a wife who trusted to the extreme her husband in handling her business affairs and in the conduct of commercial transactions. Throughout the entire period during which the parties resided together the wife relied entirely upon the husband's advice and judgment in all business affairs relating to the properties which she owned either solely or jointly with her husband. The chancellor found—with evidentiary basis—that she allowed the husband to use and supervise her property because she relied on his business judgment, honesty and integrity and placed her faith in him as her agent and fiduciary.

Our case law on this subject is well settled. As stated in *Darlington's Appeal,* 86 Pa. 512, 518 (1878)— a landmark decision—: "A transaction between persons so situated [as wife and husband] is watched with extreme jealousy and solicitude, and if there be found the slightest trace of undue influence or unfair advantage, redress will be given to the injured party." The Court went on to state that: "Owing to the near connection between the parties . . ., the transaction in itself is considered so suspicious as to cast the burden of proof upon the person who seeks to support it, to

show that he has taken no advantage of his influence or knowledge, and that the arrangement is fair and conscientious." (at p. 518). Moreover, where a husband obtains his wife's property without adequate consideration, a rebuttable presumption arises that a trust is created in her favor, and, if the husband claims a benefit arising from the transaction, he must *show affirmatively* that he acted in good faith and took no undue advantage of his wife: *DeBernard v. DeBernard,* 384 Pa. 194, 196-197, 120 A. 2d 176 (1956). On the other hand, where a husband purchases real estate or personal property with his own funds and places it in his wife's name or transfers such property to his wife without consideration, there is a factual presumption that a gift was intended and, in order to rebut that presumption and establish a resulting trust in his favor, the husband must support his claim by clear, explicit and unequivocal—though not necessarily uncontradicted—evidence: *Lapayowker v. Lincoln College Preparatory School,* 386 Pa. 167, 171-172, 125 A. 2d 451 (1956). We have cited with approval the use and purpose of a constructive trust arising out of a confidential relationship as articulated by the then Judge CARDOZO in *Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380-389, 122 N.E. 378 (1919) wherein he stated: "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee. . . . A court of Equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief." *Chambers v. Chambers,* 406 Pa. 50, 54-55, 176 A. 2d 673 (1962). Undoubtedly, between the wife and husband in the case at bar a confidential relationship existed marked by the great reliance of the wife on the hus-

band in business transactions and the burden rested on the husband to show he took no advantage of her.

Initially, we must consider whether the wife is barred either by laches or the statute of limitations[4] from the relief which she now seeks. The husband's counsel contends that the attempt of the wife to impose a constructive trust must fail because it was not made within a reasonable time (*Barnes & Tucker Co. v. Bird Coal Co.*, 334 Pa. 324, 5 A. 2d 146 (1939)) and that the ruling in *Morrish v. Morrish*, 262 Pa. 192, 105 A. 83 (1918)—wherein it was held that, by reason of the social importance of maintaining the family relation, statutes of limitations and laches ordinarily do not affect the wife's rights since she cannot be expected to treat her husband as a stranger—is outdated and no longer necessary to protect the rights of a wife. We disagree with this contention.

In the case at bar, the wife, by reason of the confidential relationship with her husband, was owed a fiduciary duty by the latter. The wife, as the record unequivocally indicates, reposed the utmost of trust in her husband in business affairs and relied implicitly upon his decisions. A union of husband and wife, coupled with a confidential relationship, will prevent the husband from asserting the defense of laches unless he can show detriment suffered because his wife

---

[4] The Act of April 22, 1856, P. L. 532, §6, 12 P.S. §83 which provides, in pertinent part: "No right of entry shall accrue, or action be maintained . . . to enforce, any implied or resulting trust as to realty, but within five years after such . . . equity or trust accrued . . .; unless . . . there has been, in part, a substantial performance, or such contract, equity of redemption or trust, shall have been ackowledged by writing to subsist, by the party to be charged therewith, within the same period: Provided, that as to any one affected with a trust, by reason of his fraud, the said limitation shall begin to run only from the discovery thereof, or when, by reasonable diligence, the party defrauded might have discovered the same, . . . ."

*knowingly* sat on her rights for an unreasonable length of time. Moreover, the mere passage of time does not establish laches; laches must be determined only after all the circumstances of the case are developed: *Lindenfelser v. Lindenfelser,* 383 Pa. 424, 426-427, 119 A. 2d 87 (1956); *Schireson v. Shafer,* 354 Pa. 458, 463, 47 A. 2d 665 (1946). Ordinarily, the statute of limitations will not bar relief in a wife-husband situation (*Morrish v. Morrish,* supra, 201), particularly in the absence of any proof of discovery of, or an opportunity, by reasonable diligence, to discover, the fraud practiced by a husband. See: *Silver v. Silver,* 421 Pa. 533, 219 A. 2d 659 (1966). The instant record completely refutes the contention of the husband that either laches or the statute of limitations bars this action.

## Keystone and Welford Stock

Keystone was incorporated in Pennsylvania on February 25, 1932. On September 24, 1934, the wife's mother, Ida Fischman, who was the owner of 2899 shares of Keystone stock, transferred those shares to the wife. The husband paid no consideration to Ida Fischman for this transfer and he had no legal or equitable right, title or interest therein and his contention that Ida Fischman was his "straw" is unsupported by the record. Because of gifts made by the wife to the sons and by reason of a later stock dividend, the wife's holdings stood at 1138 8/9 shares as of July 1, 1951. In 1956, the husband requested that the wife transfer this stock to him so he could obtain a bank credit, promising its return after its purpose was served. Accordingly, on November 21, 1956, the wife transferred her 1138 8/9 shares of Keystone to the husband. These shares were transferred back to the wife on April 9, 1958.

The wife was sole owner also of 250 shares of Welford stock. The husband now claims that he provided the purchase money for this stock and that the wife is merely his "straw". However, the evidence supports the chancellor's finding that the husband did not pay any money when the stock was acquired by the wife and, furthermore, since the stock was never the husband's, there can be no presumption that he made a gift of it to his wife or that there existed a resulting trust in his favor.

In September 1961, the husband requested that the wife transfer the 1138 8/9 shares of Keystone and 250 shares of Welford to the parties as tenants by the entireties so that he could obtain bank credit. To induce this transfer, the husband promised that he would transfer his own stock in Keystone and Welford to the parties as tenants by the entireties and that he would transfer to the wife stock which he owned in Eric Corporation of America. The husband also promised that the transfer would be temporary and he would re-transfer the stock as soon as he obtained the credit he sought. Relying on these representations, the wife made the requested transfers on September 18, 1961. At the time of the transfers, the evidence fully supports a finding that the wife was the sole and exclusive owner of these stocks and did not hold them in any trust or as a "straw" for the husband. The husband failed to keep his promises and never returned these shares of stock to the wife despite her repeated demands. The chancellor decreed that the Keystone and Welford stock be returned to the wife and the evidence fully supports this portion of the decree.

### 16th Street Property

The chancellor found that on May 15, 1944, one Theodore F. Ziegler executed a deed for the 16th Street

property to the husband, D. Arthur Magaziner, and Albert H. Lieberman as trustees of Keystone and that a declaration of trust was executed to that effect. Keystone paid the $20,000 consideration. On November 15, 1945, the board of directors of Keystone passed a resolution authorizing the sale of the 16th Street property to the wife for $20,000 with Keystone taking a purchase money bond and mortgage in that amount.[5] Pursuant to that resolution, on December 28, 1945, the husband, Magaziner and Lieberman executed a deed for the property to the wife, which deed was duly recorded. Two years later, on August 18, 1947, the husband obtained from the wife a transfer of the property to the parties as tenants by the entireties. Thereafter, the husband increased the mortgage on the premises over a period of years and used the proceeds of the mortgage for his own purposes. The husband contends that, while a transfer from a wife to a husband alone creates a rebuttable presumption that a trust is created in favor of the wife, a transfer from a wife to husband and wife as tenants by the entireties created a gift to the husband. However, the husband overlooks two facts: first, since a confidential relationship existed between the parties, a transfer from her to him creates a *rebuttable* presumption of a trust (*Lapayowker v. Lincoln College Preparatory School,* 386 Pa. 167, 125 A. 2d 451 (1956)); second, in *DeBernard v. DeBernard,* supra, pp. 196-197, although the Court held that the wife created no tenancy by the entireties because her husband's fraud vitiated the transfer, it reiterated the rule that where a husband obtains his wife's property without adequate consideration the law creates a rebuttable presumption that a trust is created in her favor. Thus, whether the transfer was from wife to husband solely,

---

[5] The original corporate records indicate clearly the wife was the purchaser.

or from wife to husband and wife as tenants by the entireties, the same legal result obtains.

The husband also contends that the evidence and the case law do not support the chancellor's finding of a diversion of entireties' income by the husband. He argues that the chancellor's view that the wife is entitled to one-half the income from the entireties' property for her own individual use is erroneous and that she is entitled only to have the income from the entireties' property applied to her benefit as well as the husband's, citing *Reifschneider v. Reifschneider*, 413 Pa. 342, 196 A. 2d 324 (1964). This argument is presently inapplicable since the chancellor, on adequate evidence, found that the wife is the exclusive owner of the property. The record supports the chancellor's finding that it was the wife who provided the consideration for the purchase of the property, that she continued to claim individual ownership of it after it was transferred to a tenancy by the entireties, and that the husband, in securing a mortgage, executed an affidavit acknowledging that he was the "husband of the owner". The husband thereafter deprived the wife of any part of the rental income of the premises for her own individual use and enjoyment and failed to account for such rentals. Moreover, the husband failed to overcome the presumption that a trust was created in the wife's favor. We concur with the chancellor's decree that the wife is the exclusive owner of this property and is entitled to a reconveyance of it; the evidence points unerringly to this conclusion.

## Felton Property and Arcadia Stock

Felton executed a deed to premises 4800 Rising Sun Avenue, Philadelphia, to the parties as tenants by the entireties on December 23, 1941. The chancellor found that neither party successfully rebutted the presump-

tion that ownership of the Felton property is vested in them as tenants by the entireties, a presumption which must be overcome by clear and convincing evidence (*Holmes Estate*, 414 Pa. 403, 406, 200 A. 2d 745 (1964)), although he did find that the husband has prevented the wife from receiving any of the rentals produced by the property and that he has failed to account for said rentals.

Arcadia, a Delaware corporation, incorporated on November 22, 1929, owns and operates the Arcadia Theatre in Philadelphia. On October 14, 1931, Uptown Realty Company transferred 50 shares of Arcadia stock to one Charles Segall, who, on January 2, 1934, transferred them to the husband. The wife subsequently acknowledged joint ownership of this stock with the husband and, when she surrendered these shares in return for a certificate for 40 shares of stock in 1943, she offered no objection that the certificate was issued to the parties as tenants by the entireties. Her objection arose only upon the parties' separation in 1962. The husband also acknowledged joint ownership of this stock in *Arcadia Theatre Co. v. Sablosky*, 418 Pa. 34, 46, 209 A. 2d 375 (1964). Despite such joint ownership, the chancellor found that the husband has deprived the wife of the use, benefit and enjoyment of the stock in that he has prevented her from voting her interest, has voted the stock contrary to her wishes, has denied her access to the Arcadia premises, has refused her access to the corporations books and records, has refused to permit her to receive dividends and has exercised personal management and operation of the corporation and theatre contrary to her wishes and without her participation. The chancellor appointed a receiver to vote the stock, receive dividends and state an accounting in Arcadia.

The net result is that both Felton and Arcadia now stand owned by the parties as tenants by the entireties

and that a receiver has been appointed in regard to both. It is immaterial whose funds were used to create the tenancy by the entireties (*Cribbs Estate*, 411 Pa. 242, 250, 191 A. 2d 379 (1963)) and the placing of the property in both names, without more, created an estate by the entireties (*Brenner v. Sukenik*, 410 Pa. 324, 330, 189 A. 2d 246 (1963)); *Holmes Estate*, 414 Pa. 403, 406, 200 A. 2d 745 (1964)). Once a tenancy by the entireties has been created, then neither spouse can appropriate to his or her own use the property held in such tenancy and the only appropriation which can be justified is one made *in good faith* for the *mutual benefit* of both parties to the tenancy: *Berhalter v. Berhalter*, 315 Pa. 225, 227-228, 173 A. 172 (1934); *Nachman v. Nachman*, 417 Pa. 389, 394, 208 A. 2d 247 (1965). The accruing income belongs in its entirety to each of the tenants and must be applied to their *mutual* benefit: *Reifschneider v. Reifschneider*, 413 Pa. 342, 344, 196 A. 2d 324 (1964).

Each party challenges the chancellor's findings and decree concerning the Felton and Arcadia entireties' property. The wife contends that the chancellor erred in declining partition of the entireties' properties. The husband contends that the chancellor erred in appointing a receiver to account for the rentals because it is immaterial which party receives the fruit of entireties' property since presumptively it is used for the benefit of both: *Wakefield v. Wakefield*, 149 Pa. Superior Ct. 9, 25 A. 2d 841 (1942). See also: *Schweitzer v. Evans*, 360 Pa. 552, 63 A. 2d 39 (1949). The general rule regarding entireties' property is clear; neither tenant can partition (except after divorce) nor terminate or sever by his or her own conveyance, as a joint tenant can do, nor by his or her own act affect the other's right of survivorship: *Holmes Estate*, 414 Pa. 403, 407, 200 A. 2d 745 (1964).

In *Stemniski v. Stemniski*, 403 Pa. 38, 42, 169 A. 2d 51 (1961) this Court stated that, "a violation of the rules by one's spouse appropriating the property to his own use works a revocation of the estate by the fiction of the appropriation's being an offer of an agreement to destroy the estate and an acceptance of that offer when the other spouse starts suit: the property is then fit for accounting and division." See also: *Berhalter v. Berhalter*, 315 Pa. 225, 173 A. 172 (1934) ; *Werle v. Werle*, 332 Pa. 49, 1 A. 2d 244 (1938) ; *Lindenfelser v. Lindenfelser*, 396 Pa. 530, 153 A. 2d 901 (1959). Although *Stemniski* involved bonds and savings accounts, the earlier case of *De Luca v. De Luca*, 388 Pa. 167, 130 A. 2d 179 (1957), adjudged real property subject to accounting and division. And in *Lindenfelser v. Lindenfelser*, 396 Pa. 530, 534-535, 153 A. 2d 901 (1959), this Court considered both the earlier *Lindenfelser* case and *De Luca* case and stated the modern rule to be that where husband and wife are separated but not divorced and where one of them is excluded from the exercise or enjoyment of rights inherent in an estate held by the entireties, an accounting of the property so held may be ordered and the property or proceeds divided equally between them. The modern rule permits the partition of real estate: *Stemniski v. Stemniski*, 403 Pa. 38, 169 A. 2d 51 (1961) ; *Lindenfelser v. Lindenfelser*, 396 Pa. 530, 153 A. 2d 901 (1959) ; *De Luca v. De Luca*, 388 Pa. 167, 130 A. 2d 179 (1957) ; *Lindenfelser v. Lindenfelser*, 383 Pa. 424, 119 A. 2d 87 (1956) ; *Berhalter v. Berhalter*, 315 Pa. 225, 173 A. 172 (1934).

The wife was excluded effectively from the exercise and enjoyment of her inherent rights in the entireties' properties. The record convincingly shows that the husband acted in a manner inconsistent and detrimental to the wife's interest in Arcadia stock. He has prevented her from voting the stock as she wished, has deprived her of dividends for her own use and support,

and has allowed other corporations in which he has a substantial interest to occupy space in the Arcadia building without paying rent.

The rentals from Felton have been paid to a bank and a portion applied to repay a loan created for the husband's sole benefit. He has refused to account to the wife for rentals received from said property and has prevented her from receiving any rentals for her own separate use.

Even if the wife had established abuse by the husband to only one of the entireties' properties she still would be entitled to a partition of the several properties. She need not wait till all of the properties be dissipated: *Watkins v. Watkins*, 393 Pa. 284, 286, 142 A. 2d 6 (1958).

In the case at bar, the chancellor has not refused partition. A receiver was appointed to serve until further order of the Court which retained jurisdiction of the matter.[6] And we are not to say that the chancellor erred in this respect in view of the need for an accounting to be rendered to the court showing exactly what is due each party with regard to these two assets. However, after such accounting is completed, then a division or partition is in order. By instituting this suit the wife has accepted the husband's offer of an agreement to destroy the entirety estate: *Stemniski v. Stemniski*, supra, p. 42.

The chancellor determined that each party should bear half the costs, exclusive of the costs of the receiver. The power of the chancellor to impose costs, in whole or in part, on any party to the action is established by Rule 1526 of the Pennsylvania Rules of Civil Proce-

---

[6] The power of the court to appoint a receiver, under the extraordinary circumstances presented by this record, is clear: *Lindenfelser v. Lindenfelser*, 396 Pa. 530, 153 A. 2d 901. In the aggravated circumstances herein portrayed, the appointment of the receiver did not constitute an abuse of discretion.

dure.  The exercise of that discretion by the court below will not be interfered with by an appellate court except where the lower court has grossly misused its power: *Gordon v. Hartford Sterling Co.,* 350 Pa. 277, 286, 38 A. 2d 229 (1944) ; *National A. & I. Co. v. Workmen's Circle,* 289 Pa. 164, 169, 137 A. 184 (1927).  We find no such misuse of discretion.

The decree is affirmed in all respects except that Arcadia and Felton are to be partitioned after the receiver's accounting is completed.  Appeal costs on Samuel Shapiro.

Mr. Justice MUSMANNO would affirm the portions of the decree from which Samuel Shapiro appeals (288 January Term 1965) but would reverse the portions of the decree from which Edna Shapiro appeals (No. 343 January Term 1965).

------

DISSENTING OPINION BY MR. JUSTICE COHEN :

The history of the marital relationship which is recounted in appellant's brief clearly demonstrates to me that this is not the type of litigation that can be determined by reference to specific interests in specific property.

For some 40 years the wife permitted the husband to completely dominate and direct the involved financial operations of the husband's business endeavors.  To now attempt to unravel and determine the specific ownership of specific pieces of property, to me, appears impossible.  The business relationship of this husband and wife is not unlike the relationship that exists in most marriages.  Only when that marital relationship sours do unrealistic principles involving the business relationship demand application.  I would not apply those unrealistic principles to the facts of this case.  I would vacate all previous determinations made in this and in all other extensive and costly litigation indulged in be-

tween this husband and wife, and require of both litigants and counsel that all actions at law be terminated and a settlement of their differences consummated. This case marks the fourth or fifth time the litigants have been before this Court on appeals from lower court action arising out of their marital disputes. Both counsel at argument indicated that they are willing to compromise their differences. I would compel them so to do.