396 A.2d 1263

**Regina M. DAMIRGIAN**

v.

**Michael DAMIRGIAN, Appellant.**

Superior Court of Pennsylvania.

Submitted March 31, 1978.

Decided Dec. 29, 1978.

Irwin Paul, Philadelphia, for appellant.

Norman A. Oshtry and Judith S. Eden, Philadelphia, for appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

JACOBS, President Judge:

Michael Damirgian (Appellant) appeals to this Court from a final decree in equity ordering that he pay to Regina

Damirgian (Appellee) $27,364.59 plus interest, that he account to her for the remaining funds in their joint bank accounts, and that those funds be divided equally between them. Appellant raises two issues in this appeal: whether the lower court erred in ordering the payment of the funds to appellee and whether the lower court erred in conducting a unitary rather than a bifurcated proceeding before ordering the accounting and the payment of the funds. We affirm the order of the lower court.

The facts, as found by the Chancellor and supported by the evidence, are as follows: Appellant and appellee are husband and wife. During their marriage and prior to May 1, 1972, they owned several savings accounts and savings certificates as tenants by the entireties.[1] Prior to May, 1972,

1. The funds held by the parties as tenants by the entireties and the disposition of those funds are as follows:

| Account | Date of Withdrawal (W) / Deposit (D) | Amount Withdrawn/Deposited | Balance |
|---|---|---|---|
| Third Federal Savings and Loan Association | | | |
| Savings Certificate | May 25, 1972 (W) | $10,133.75 | $ 0.00 |
| Community Federal Savings and Loan | | | |
| Savings Account | May 22, 1972 (W) | $ 5,500.00 | $ 131.00 |
| | May 22, 1972 (W) | 900.00 | |
| | June 7, 1972 (D) | 1,201.68 | |
| | June 12, 1972 (W) | 839.62 | |
| | June 22, 1972 (W) | 1,150.00 | |
| Savings Certificate | June 7, 1972 (W) | $17,167.87 | $ 0.00 |
| Central Penn National Bank | | | |
| Savings Account | May 25, 1972 (W) | $ 5,000.00 | $ 569.56 |
| | June 7, 1972 (W) | $ 5,500.00 | |
| Public Federal Savings and Loan | | | |
| Savings Account | June 8, 1972 (W) | $14,200.00 | $ 566.02 |
| TOTAL | | $59,189.56 | $1,266.58 |

the passbooks and certificates pertaining to the jointly held property were kept in an unlocked desk drawer in an office in the Damirgians' home. On May 5, 1972, appellee looked in the desk drawer for the passbooks and certificates and found them missing. Several times over the next two weeks, appellee asked appellant where they were located but he refused to tell her. In fact, the passbooks were in the glove compartment of appellant's truck located on the Damirgians' property and the savings certificates were in a steel box in a closet in the office. The steel box was locked and appellant did not have a key which would open it.

On May 19, 1972, appellee took their four children and some personal belongings and left the marital home. On the same day, she withdrew $2200.00 from a checking account held in appellant's name only at the Cheltenham National Bank, and $300.00 from a checking account held in both of their names at the same bank. Between May 22, 1972 and June 22, 1972, appellant withdrew over $59,000.00 from the savings accounts and savings certificates held by the parties as tenants by the entireties.

On August 31, 1973, appellee instituted a suit in equity seeking an accounting of the monies withdrawn from the various savings accounts and savings certificates, one-half of all the funds so withdrawn, and one-half of the funds remaining in said accounts. Following a hearing, Judge STERN concluded as a matter of law that appellant's appropriation of the jointly held funds was an offer of an agreement to destroy the estate by the entireties which was accepted by appellee when she instituted this equity action. He further concluded that appellee was not authorized to withdraw the $2200.00 from appellant's solely owned checking account, but that she was justified in withdrawing the $300.00 from their jointly owned checking account and that she applied that sum for their mutual benefit. Finally, the Chancellor decreed that appellee was entitled to receive

$27,364.59 plus interest and ordered an accounting and equal division of the remaining jointly held property.[2]

Appellant filed exceptions to the Chancellor's findings of fact and conclusions of law which were dismissed by the court below. This appeal is from the Court's denial of his exceptions.

It is well-established in Pennsylvania that

Where both husband and wife have the power to withdraw funds deposited in a joint account, the power must be exercised in good faith for the mutual benefit of both, and cannot be rightly exercised by the fraudulent withdrawal of the corpus of the funds for the exclusive use of one for the purpose of depriving the other of any use thereof or title thereto.

*Berhalter v. Berhalter*, 315 Pa. 225, 228, 173 A. 172, 173 (1934). It is also well-established that

A violation of the rules by one spouse's appropriating the property to his own use works a revocation of the estate by the fiction of the appropriation's being an offer of an agreement to destroy the estate and an acceptance of that offer when the other spouse starts suit: the property is then fit for accounting and division. [citations omitted]. . . .

Furthermore, all property of the parties held by the entireties is affected, not merely the unit that has been improperly drawn upon.

*Stemniski v. Stemniski*, 403 Pa. 38, 42, 169 A.2d 51, 53 (1961). *See also Reifschneider v. Reifschneider*, 413 Pa. 342, 344, 196

2. The Chancellor made a slight error in arriving at the amount due appellee. In calculating the amounts withdrawn from the joint savings account at Community Federal Savings and Loan, the Chancellor twice counted the figures $839.62. In actuality, one of these amounts should have been $900.00 and appellee is entitled to $27,394.78 plus interest.

A.2d 324, 325–26 (1964); *Vento v. Vento*, 256 Pa.Super. 91, 94–95, 389 A.2d 615, 617 (1978).

We must determine when the joint funds were invaded and whether the appropriation was of mutual benefit to the parties or to the wrongful exclusion of the noninvading party. Appellant argues that the initial invasion was made by appellee when she withdrew $300.00 from their joint checking account. The Chancellor, however, found that the wife applied the funds to the mutual benefit of the parties— i. e. the support of their children—and that this invasion was not an offer to appellant to destroy the estate. We agree.[3] We also agree with the Chancellor that it was appellant's withdrawal of the funds from the joint savings accounts and certificates which constituted the initial invasion of the entireties property and that the monies appropriated were not spent for the mutual benefit of the parties.

Appellant testified at trial that he withdrew the money from the jointly held accounts in response to his wife's previously withdrawing funds and to protect "our interest." N.T. 88. He also argues that he withdrew the funds upon the advice of an attorney.[4] Appellant's testimony is weak-

**3.** Even if the Chancellor had held appellee's invasion of the joint checking account to have been wrongful, our disposition here would not change. There is ample authority from which we could find that appellant's hiding the passbooks and certificates was an offer to appellee to destroy the entireties estate and that her invading the joint checking account was an acceptance of the offer, or that both of these actions manifested a mutual intent on the part of the parties to destroy the estate. *See Shapiro v. Shapiro*, 424 Pa. 120, 224 A.2d 164 (1966), *overruled on other grounds; Butler v. Butler*, 464 Pa. 522, 347 A.2d 477 (1975); *Brose Estate*, 416 Pa. 386, 206 A.2d 301 (1965); *Watkins v. Watkins*, 393 Pa. 284, 142 A.2d 6 (1958).

**4.** Appellant's trial testimony throws some doubt upon his assertion that he relied on his attorney's advice. When asked whose advice he followed in making the withdrawals, he responded,

A. My own thought and a friend's.
Q. A friend's? Was this friend an attorney?
A. Yes.
Q. Could you name him?
A. John Packel. He lives next door to me.
Q. You had a conversation with him and as a result of this conversation you did what you did?
A. More or less; yes, sir.

N.T. 88–89.

ened, however, by the fact that his withdrawal of the funds was not an immediate response to appellee's actions. At issue here are five jointly held savings accounts and savings certificates. Appellant, however, withdrew the funds in nine separate transactions between May 22, 1972 and June 22, 1972. Furthermore, appellant did not close out the savings accounts entirely, but left a balance of several hundred dollars in all three accounts.

Appellant need not have resorted to self-help in order to protect his interests. If, in fact, he feared that his wife would deplete their jointly held savings accounts and certificates, he could have turned to the courts for protection, much as appellee has done here. Furthermore, since appellant possessed the passbooks and certificates there was little chance of appellee's invading the joint accounts. As appellee testified at trial,

> I called the bank and I asked them what I should do when I went to withdraw money from my account [without the passbook] and they said, "We will send you a form. It is an affidavit. When you swear you have lost it [the passbook] we will give you a replacement." In order to get money I had to lie to the bank to get another passbook. I didn't do it.

N.T. 75. Both for practical and legal reasons, then, appellant's resort to self-help was unnecessary and his appropriation of the funds was wrongful.

Finally, appellant argues that he used the money for the mutual benefit of the parties. It is true that appellee provided no detailed evidence at trial as to how appellant disposed of the money. She did testify, however, that she had never received any of the monies from the joint accounts and that appellant previously had admitted giving between $24,000.00 and $30,000.00 to his sister. N.T. 11. Appellant did not contradict this testimony, nor did he provide any evidence which would have shown that he used the appropriated funds for the mutual benefit of the parties.

■ In applying the existing case law to the facts of this case, we hold that appellant's invasion and misappropriation of the parties' jointly held property constituted an offer by appellant to destroy the estate and that appellee accepted the offer by filing this equity action. Therefore, *all* the jointly held property of the parties is now ready for an accounting and division and the Chancellor did not err in entering such an order.

Appellant also contends that the lower court erred in ordering a division of the monies misappropriated by appellant following the hearing on this matter without holding a second hearing to determine exactly what amount was due her. Appellant's argument is without merit.

■ Under prior practice, an action for an accounting in equity required two steps, a trial on the duty to account, and, if an accounting was warranted, a subsequent proceeding on the accounting itself. While such a procedure is still viable, the Chancellor now has the option of telescoping the entire procedure into one step. Pa.R.C.P. 1530(b). *See* Goodrich-Amram 2d § 1530(b):1. It is within the discretion of the court as to which of these procedures will be followed. 10 Anderson *Pennsylvania Civil Practice*, 306. Generally, the telescoped procedures still involve two parts—a finding by the trial court that a party is entitled to an accounting and then an immediate hearing on the accounting itself. In the case before us, Judge STERN went one step further and found both appellee's right to an accounting and the amount due her in one step.[5] Despite the fact that this varies from normal procedure in some respects, Judge STERN did not err in entering the order as he did.

Appellant alleges that he has been denied his day in court. He argues to us that he had a valid defense—use of the funds for the mutual benefit of the parties—which he planned to set forth in the trial on the accounting. This argument totally overlooks the fact that this defense could

5. Judge STERN also ordered an accounting and an equal division of the parties' property not included in the amounts which appellant withdrew from the jointly held accounts.

have been and, indeed, should have been raised during the hearing on appellee's right to an accounting.[6]  As the court said in its opinion sur exceptions,

It was the opinion of the court that defendant's exceptions were an attempt to gain an opportunity to retry the case.  The record indicates that the issues were not limited in any way before trial.  The questions which he would like to raise in an accounting are in fact matters of defense which should have been raised at the hearing.  Implicit in the court's finding that defendant wrongly appropriated the funds is a determination that they were not properly expended for joint purposes.  Cf. *Linett v. Linett*, 437 Pa. 138 [262 A.2d 849] (1970).  In contrast the court found that Mrs. Damirgian used the entireties money she withdrew to support herself and the parties' children.  Defendant had the opportunity to present similar evidence in his behalf.

Not only did appellant present no evidence as to his use of the funds, but also he did not rebut appellee's testimony that she received none of the money and that he gave his sister a substantial part of it.

In addition to the fact that the issues to be tried were not limited prior to trial, we note that appellant's counsel never inquired of the court whether appellee's complaint would encompass more than one trial.  At the conclusion of the testimony, Judge STERN announced that the record would be closed and asked whether counsel wanted to file briefs on the matter.  Appellant's counsel responded, "I have no desire to file a brief.  I think I made our position clear on the record.  I think Your Honor certainly knows enough about these situations to make a ruling."  N.T. 101.  Again, in response to the Court's asking counsel if they wanted to "sum up," appellant's counsel responded, "I will stand on the record, Your Honor."  N.T. 111.  Despite repeated opportunities to raise the mutual benefit defense, appellant did not

6. Appellant raised the mutual benefit defense in his answer to appellee's complaint.  He did not raise it again, however, until after the conclusion of the trial on the right to an accounting.

raise it.  He is not now entitled to still another opportunity to do so.

Finally, it would have been a waste of judicial time and effort to require a second trial before determining the amount due appellee.  Where it is evident from a trial on the right to an accounting that the party awarded the accounting is entitled to a sum certain the trial court need not hold a second hearing on the issue of the amount due that party.

Here, representatives from the four banks where the parties' joint accounts were held testified at trial to the existence of the accounts, the amounts involved, the dates and amounts of withdrawals by appellant, and the balances remaining.[7]  N.T. 33–51.  Appellant did not dispute the witnesses' testimony nor did he deny having made the withdrawals.  Following the court's conclusion that appellee was entitled to an accounting, the only question remaining was the amount to which she was entitled.  So far as the joint accounts were concerned, the total sum withdrawn was evident and undisputed and she was clearly entitled to one-half of the amount less the $2200.00 she had withdrawn from appellant's solely owned checking account.  Any other amount to which appellee was entitled was not clearly established at trial.  Therefore, the Judge ordered an accounting as to those amounts and an equal division of that property between appellant and appellee.  Since appellant states no reason, other than his mutual benefit defense for denying appellee one-half of the jointly held funds, we find no error in the judge's order.

The order of the lower court is modified and appellee is awarded $27,394.78 plus interest.  In all other respects, the order is affirmed.

HOFFMAN, J., did not participate in the consideration or decision of this case.

7.  There also were entered into evidence copies of all the withdrawal slips used by appellant in acquiring the funds.