## Mountz v. Mountz

*Arthur T. McDermott*, for plaintiff.
*Frances H. DelDuca*, for defendant.

SHEELY, *J.*, July 23, 1981—On September 15, 1981, plaintiff, John W. Mountz, filed a complaint in equity seeking partition and division of the marital home. The home was owned as tenants by entireties by plaintiff and defendant, M. Isabel Mountz. Plaintiff alleged that defendant excluded him from the marital home by changing the locks and refusing to admit him to the home. Plaintiff claims to have separated from defendant on February 28, 1981, and filed for divorce on March 25, 1981. The divorce, however, was denied by the master and exceptions were dismissed on January 14, 1982.

Defendant filed an answer to the complaint on November 25, 1981, and through new matter and counterclaim, seeks an accounting.

A trial was held on April 1, 1982. From the testimony presented, we make the following

## FINDINGS OF FACT

1. Plaintiff, John W. Mountz, is a 58-year old adult individual residing at 1155 Linn Drive, Carlisle, Cumberland County, Pa.

2. Defendant, M. Isabel Mountz, is a 62-year old adult individual residing at R. D. #1, Boiling Springs, Cumberland County, Pa.

3. Plaintiff and defendant are husband and wife, having been married on April 12, 1956.

4. The parties have a daughter, with whom each party has communicated since the separation.*

5. The parties own as tenants by entireties the following

(a) The marital home, purchased in 1964, at R. D. #1 Boiling Springs, South Middleton Township, Cumberland County, Pa.

(b) A newly constructed house and land located at 1155 Linn Drive, Carlisle, Cumberland County, Pa.

(c) Various furnishings located in both the home at R. D. #1, Boiling Springs and the home at 1155 Linn Drive, Carlisle.

(d) Savings bond, joint checking and savings accounts, and a safe deposit box.

6. Plaintiff, upon return from a trip to Florida with another woman in February, 1981, told defendant that he would seek a divorce.

7. Plaintiff filed for a divorce in Cumberland County on March 25, 1981. A divorce was denied by the master, however, and exceptions were dismissed on January 14, 1982.

8. A support order for the benefit of defendant was entered on June 18, 1981 at $140 each week.

---

*All notes of testimony are taken from the Transcript of Testimony and Proceedings of April 1, 1982.

9. Plaintiff moved from the marital home on March 16, 1981. He moved into the Linn Drive home, taking several items of entireties property, including a bunk bed, television set, chair, blanket and lamp.

10. Plaintiff's paramour and her daughter have resided in the Linn Drive home, with plaintiff, since June, 1981.

11. Each party relinquished the keys to the home in which they were not residing. This trading of keys, accomplished through the couple's daughter in March, 1981, was made in an effort to keep the lines of communication open between them.

12. Thereafter, when the home was locked, plaintiff could not enter without defendant's consent.

13. After leaving the marital home on March 16, 1981, plaintiff returned several times to collect his clothing, guns, and a radio.

14. Plaintiff also returned to the marital home late at night on various occasions, frightening defendant. One evening, at 1:00 a.m., plaintiff threw a bottle against the refrigerator door during a discussion with defendant. Defendant ran into the garage in fright.

15. During the bottle-throwing incident, plaintiff threatened defendant, saying, "I'll get you. I'll get you yet."

16. On one occasion plaintiff threatened to knock out defendant's teeth.

17. On another occasion plaintiff said he "would get" defendant.

18. On still other occasions, plaintiff told defendant that she ought to be killed.

19. Defendant, due to her fear of plaintiff, changed the locks on the R. D. #1 home on April 16, 1981.

20. Plaintiff has visited the R. D. #1 home since the locks were changed; in April, 1981, to collect

his remaining clothes, and on May 8, 1981, to take the drawers from both a desk and a gun cabinet. He has not called back since that time.

21. Plaintiff could not remember with clarity the exact dates of his Florida trip, the number of times he called defendant, or when he called her for entrance to the home.

22. Defendant testified that "he was welcome to come any time he wanted to" if he told her in advance, and may return to the home to live if he gives up the other woman.

23. Plaintiff never asked for keys to the new locks, and did not ask to return to live in the marital home.

24. Although some items of plaintiff's personal property remain in the marital home, plaintiff has returned to the home to remove some items, and there is credible evidence that plaintiff has not attempted to return since his visit on May 8, 1981. In addition, testimony indicates that a battery charger was removed by plaintiff himself, and a painting purchased during the marriage was taken from the basement of the home by the couple's daughter.

25. Defendant refused to sell the R. D. #1 property, although she had originally agreed to list it with a realtor, when she learned that she would not be moving into the Linn Drive property. Defendant did not sign a contract for the sale of the home.

26. Defendant cashed an income tax refund check in March, 1981, and used one-half of the total amount of $1,075, for items she required. Plaintiff was not supporting her at that time. The remaining one-half of the amount was deposited in the bank and subsequently withdrawn by plaintiff.

27. Defendant was not employed during the marriage. She has held a series of part-time jobs since June, 1981, in order "to keep things going"

and make tax and mortgage payments to prevent foreclosure on the R. D. #1 property.

28. Defendant alone made three of the four interest payments due in 1981, on a lien against the R. D. #1 property in order to prevent foreclosure. Each payment amounted to $843.37.

29. Defendant alone paid the real estate and school taxes due on the R. D. #1 property in 1981, amounting to $945.14.

30. Plaintiff cashed jointly-owned savings bonds in 1981, valued at $1500—$2000, claiming that the proceeds were used to pay debts incurred from both entireties properties. Defendant does not know what happened to the bonds and has not received anything from them.

31. Plaintiff closed both a joint savings account for $865.49 and a joint checking account for $1,344.65, and opened a checking account in his own name. The checking account consisted of $269.65 under "previous balance," and the $1,075 deposited as one-half the income tax refund check. He again claimed to have applied the funds to debts incurred from the entireties properties.

32. Plaintiff gave no notice to defendant when he closed the bank accounts.

33. Plaintiff made payments concerning the Linn Drive property but made no payments on the R. D. #1 property after March 31, 1981.

34. Defendant has never had joint use of the Linn Drive entireties property.

35. Defendant relinquished her key to the joint safe deposit box upon plaintiff's request, after the parties separated.

36. Stock, valued at approximately $500, is in plaintiff's name only, and was received by plaintiff from his employer.

## DISCUSSION

As a general rule, no partition of entireties property can take place *prior* to a divorce: Shoup v. Shoup, 469 Pa. 165, 364 A. 2d 1319 (1976); Sterrett v. Sterrett, 401 Pa. 583, 166 A. 2d 1 (1966). There is, however, an exception to this general rule. Property which is owned by the parties as entireties property cannot be used to the exclusive benefit of one spouse without the consent of the other spouse: DeLuca v. DeLuca, 388 Pa. 167, 130 A. 2d 179 (1957).

Once a tenancy by the entireties has been created, then neither spouse can appropriate to his or her own use the property held in such tenancy and the only appropriation which can be justified is one made *in good faith* for the *mutual benefit* of both parties to the tenancy: Shapiro v. Shapiro, 424 Pa. 120, 136, 224 A. 2d 164, 172 (1966).

The right to bring action against a spouse exists when the appropriating spouse totally excludes the nonappropriating spouse from any form of possession of the entireties property: Lindenfelser v. Lindenfelser, 383 Pa. 424, 119 A. 2d 87 (1956); Brobst v. Brobst, 384 Pa. 530, 121 A. 2d 178 (1956). Thereafter, in Lindenfelser v. Lindenfelser, 396 Pa. 530, 153 A. 2d 901 (1959), the court reasoned that the holdings in the earlier Lindenfelser case, supra, and DeLuca, 388 Pa. 167, 130 A. 2d 179 (1957),

". . . together set down the modern rule to be that where husband and wife are separated but not divorced, and where one of them is excluded from the exercise or enjoyment of rights inherent in an estate held by the entireties, an accounting of property so held may be ordered and the property divided equally between them." Id at 534-535, 153 A. 2d at 905.

This right to partition is founded upon the legal fiction that the misappropriation of entireties property is an offer to the other spouse of an agreement to destroy the estate. The offer is accepted when that spouse files suit. Further, not only is the misappropriated property affected, but all entireties property is affected and therefore subject to partition: Stemniski v. Stemniski, 403 Pa. 38, 169 A. 2d 51 (1961).

As the right to partition is dependent on one's misappropriation of the entireties property, Reifschneider v. Reifschneider, 413 Pa. 342, 196 A. 2d 324 (1964), it must be determined "whether one spouse has been appropriating the property to his or her own use so that there has been a wrongful exclusion. . . . This is a factual determination, however, and it is [the plaintiff's] obligation to prove to the court that such a state of facts exists." Linett v. Linett, 437 Pa. 138, 142, 262 A. 2d 849, 850 (1970); See: Damirgian v. Damirgian, 262 Pa. Superior Ct. 463, 396 A. 2d 1263 (1978); Livingston v. Livingston, 288 Pa. Superior Ct. 22, 430 A. 2d 1193 (1981).

Wrongful exclusion has been found in a number of instances where the parties were separated, but not divorced. Such situations include a wife's appropriation of $6000 from a joint checking account by which a new account in her own name was opened without the husband's knowledge or consent, Bearhalter v. Bearhalter, 315 Pa. 225, 173 A. 172 (1934), and a husband's withdrawal of funds for his own use from a joint checking account, Werle v. Werle, 332 Pa. 1, 49 A. 2d 244 (1938). Similarly, a man's redemption of jointly owned bonds, the subsequent deposit of the money in a solely held safe deposit box, and the closing of three joint bank accounts gave clear proof of his bad faith regarding

such entireties property. His arrogant manner and ineffectual attempt to clear himself further supported the finding that he failed to carry the burden of proving that the funds were used to the mutual advantage of the parties: Stemniski v. Stemniski, 402 Pa. 38, 169 A. 2d 51 (1961).

It is recognized in Pennsylvania that "where both husband and wife have the power to withdraw property held by the entireties, the power must be exercised in good faith for the mutual benefit of both." Reifschneider v. Reifschneider, 413 Pa. 342, 344, 196 A. 2d 324, 325 (1964). So that a woman, prevented by her husband from voting her interest in jointly held stock, was wrongfully excluded from the use and enjoyment of that stock. "The record convincingly shows that the husband acted in a manner inconsistent and detrimental to the wife's interest in [the] stock." Shapiro v. Shapiro, 424 Pa. 120, 137, 224 A. 2d 167, 173 (1966). In Vento v. Vento, 256 Pa. Superior Ct. 91, 389 A. 2d 615 (1978), the court specifically pointed out that testimony given on a husband's misappropriation of joint accounts without his wife's consent or knowledge, along with his own lack of specificity regarding the use of the funds, adequately supported an order for partition. The lower court must evaluate the credibility of the testimony offered before finding that a partition is in order. In Livingston v. Livingston, 288 Pa. Superior Ct. 22, 430 A. 2d 1193 (1981), testimony concerning the use of only $4000 of the total amount of $63,000 appropriated from joint bank funds was held inadequate to refute a contention that the innocent spouse was wrongfully excluded from the use and enjoyment of these funds.

It is therefore necessary to determine whether plaintiff in the present action was in fact wrongfully excluded from the use and enjoyment of the marital

home and entitled to a partition of the entireties property. This determination is made upon a careful evaluation of the facts. A mere finding that the locks have been changed does not, per se, constitute a wrongful exclusion.

Plaintiff husband alleges wrongful exclusion from the marital home stemming from the fact that defendant wife changed the locks after he had moved from the home. We find, however, that the testimony does not support such a claim. Plaintiff relinquished his keys to the marital home almost one month before defendant changed the locks, and therefore voluntarily gave up his means of entering the house without defendant's consent. Plaintiff testified that even if the locks had not been changed, he could not have entered the house once he had given the keys to defendant: (F.F. 12) Defendant's action of changing the locks did not operate as a wrongful exclusion because plaintiff himself gave up his means of entrance before the locks were ever changed.

A similar situation is found in Sennett v. Sennett, 59 D. & C. 2d 117 (1972), where plaintiff husband left the marital home and defendant wife thereafter changed the locks. The parties were separated, but not divorced. Plaintiff returned to the home for some appliances and ceased to pay the interest on the home's mortgage. Defendant asked her husband to return to live in the home, although without resuming marital relations, but he refused to do so. Such a good faith offer from defendant negates any wrongful exclusion of plaintiff, and partition was denied. "The plaintiff has filed to establish that he is entitled to partition of the real property owned by the parties as tenants by the entireties." Id. at 122.

In the present case, plaintiff left the marital home in March, 1981, with several items of entireties

property, including a bed, chair, and lamp, and returned on several occasions to collect his clothes and some personal items. He also returned several times at night, frightening and harassing defendant. Later that same month, in order to keep the lines of communication open between the parties, plaintiff returned the keys to the marital home. Even after this time, however, plaintiff was twice admitted to the home to collect his remaining clothes and the drawers from a desk and a gun cabinet.

Defendant did not change the locks immediately upon plaintiff's departure. She did not change them until she had been frightened by plaintiff's late-night visits to the house and feared she was in physical danger. Plaintiff threatened her at various times, and on one occasion threw a bottle at the refrigerator, causing her to flee into the garage. The locks were changed to afford defendant *protection* from plaintiff's unexpected visits. Defendant testified that plaintiff may come to the home if he informs her of the visit in advance. It was shown that plaintiff has in fact been admitted to the home after the locks had been changed. Although plaintiff claims to have called on several occasions and been refused admittance, he could not clearly remember the number of times and the dates upon which he phoned. The credible evidence of defendant, however, supports the conclusion that she did admit plaintiff to the home on occasions when he requested such admittance and that he has not asked to be admitted to the home since his last visit on May 8, 1981.

Plaintiff also contends that defendant misappropriated items of his personal property by disposing of his tools and a painting. There is no evidence to support this claim. No mention was made of the tools, and defendant testified that plaintiff himself

took the battery charger in his truck. A painting missing from the marital home, which was purchased during the marriage, was taken by the couple's daughter. In Reifschneider v. Reifschneider, 413 Pa. 342, 196 A. 2d 324 (1964), the court held that a gift of savings bond proceeds by the husband to the couple's son was not a gift for the sole benefit of the husband. "The absence of [the wife's] consent and her lack of knowledge alone are insufficient to compel this result. . . . The recipient of this gift was the son of the spouses and that there was no apparent antagonism between the [wife] and her son constituted a sufficient basis" for finding that the gift was for the mutual benefit of the spouses. Id. at 346. 196 A. 2d 326. The application of funds by a wife to the couple's children was likewise held to be to the mutual benefit of the parties, and not an offer to partition the estate: Damirgian v. Damirgian, 262 Pa. Superior Ct. 463, 396 A. 2d 1263. (1978).

The daughter here is still in contact with both her parents, as she acted as the "go-between" when her father returned the keys to the marital home. There has been no misappropriation by defendant simply because the couple's daughter removed a painting from the basement of the marital home. Plaintiff has been allowed to return to the home to take some items, and there is credible evidence that he has not attempted to return since his visit on May 8, 1981.

Plaintiff moved from the marital home in order to live with his paramour. He moved into the Linn Drive entireties property, and had the other woman and her daughter come to live with him in the house. Plaintiff's divorce suit was dismissed so that the parties merely remained separated; defendant occupying the marital home and plaintiff, with his paramour, occupying the newly constructed entire-

ties home. Defendant testified that plaintiff would have to give up his relationship with the other woman in order for him to return to live with defendant. Plaintiff, however, has never expressed any desire to return to defendant, and has never asked for the keys to the new locks.

Under a similar fact situation, Magriney v. Magriney, 61 D. & C. 2d 572 (1972), held that "a partition will not be granted where the evidence indicates that the wife left the household primarily because of her attachment for another man and that the husband will permit her return if she stops seeing the other man." As the wife left the marital home, simply to live with another man, and the husband will allow her to return, the "stringent requirements for the extraordinary partition of property held by the entireties without the accompanying divorce has not been met." Id. at 575. The court further stated that "while partition is possible without divorce, the courts are not quick to grant such relief." Id. at 577-578. Relief is granted only when it is *clear* from the facts that one spouse was wrongfully excluded from the enjoyment of entireties property: Linett v. Linett, 437 Pa. 138, 262 A. 2d 849 (1970). The testimony in Magriney, supra, did not support a finding of wrongful exclusion. Likewise, the facts of the present case do not support such a finding.

Plaintiff relies on Gray v. Gray, 275 Pa. Superior Ct. 131, 418 A. 2d 646 (1980), in which defendant husband changed the locks on the marital home and then refused to give his wife the new keys and access to the household furnishings. The court ruled only on a demurrer, denying the demurrer as the complaint did in fact state a cause of action. "That [the husband] had changed the locks to the marital home and had refused to give [his wife] the keys . . .

shows an appropriation of entireties property sufficient to support an action for partition." Id. at 134, 418 A. 2d at 648. There was not, however, any adjudication on the merits of the case regarding whether or not the circumstances constituted a wrongful exclusion.

Defendant admitted to cashing an income tax refund check in March, 1981. She retained one-half of the amount for items she required, and deposited the remainder in a joint bank account. This remainder was then withdrawn by plaintiff. Defendant has never been employed during her marriage, and needed the money for things she required because plaintiff was not supporting her. In addition, she alone paid the taxes and the interest on a mortgage in order to stop foreclosure on the R. D. #1 property. "Maintenance and support of the wife is a proper use of entireties property, particularly in the absence of a showing that the husband is providing support for the wife." Johnson v. Johnson, 101 P.L.J. 176 (1953). The check was cashed in March, 1981, several months before a support order for defendant was entered. Defendant was also forced to seek employment by June, 1981, in order to adequately meet her financial needs.

We find that there is no adequate evidence to support an order for partition. The facts show that there has been no wrongful exclusion of plaintiff from the marital home. Plaintiff voluntarily relinquished his keys and with them his means to enter the house without defendant's consent. Therefore, plaintiff *excluded himself* from the property. Defendant continued to allow him entrance to the home, even after the locks were changed. The locks were changed to protect defendant after plaintiff harassed and frightened her with his late night visits and threats.

In addition, there is a lack of evidence that defendant wrongfully misappropriated any of the entirety property or plaintiff's personal property. Defendant denied that any items were given away which belonged to plaintiff, and testified that she needed the funds from the tax refund to support herself. We find her testimony credible, and cannot find adequate evidence to infer any wrongful exclusion of plaintiff on her part. Plaintiff has failed to meet his burden of proof to support his request for partition.

## DEFENDANT'S REQUEST FOR AN ACCOUNTING

Based upon the same events occurring subsequent to the separation, defendant has counterclaimed for an accounting of funds plaintiff withdrew from joint bank accounts and jointly held bonds. An account "implies that one is responsible to another for moneys or other things, either on the score of a contract or of some fiduciary relation, of a public or private nature, created by law, or otherwise." Ballentine's Law Dictionary 15 (2d ed. 1948). The right to an accounting of these "moneys or other things," regarding entireties property, arises from a finding that one spouse has wrongfully appropriated such property to his own use at the exclusion of the other spouse. A finding of misappropriation is to be determined from the facts of each individual case: Linett v. Linett, 437 Pa. 138, 262 A. 2d 849 (1970); Kaufmann v. Kaufmann, 166 Pa. Superior Ct. 6, 70 A. 2d 481 (1950).

Entireties property is created when money is deposited in the names of both the husband and wife, or husband or wife, and is impressed with the elements of unity of interest, time, and possession:

Bearhalter v. Bearhalter, 315 Pa. 225, 173 A. 172 (1934). Therefore, any such funds that are withdrawn are analogous to a trust, and must be used for the mutual benefit of both parties: Weiner v. Weiner, 68 D. & C. 51 (1949); Johnson v. Johnson, 101 P.L.J. 176 (1953). Accordingly, the appropriator may be required to formally account for his use of the funds: Alcorn v. Alcorn, 364 Pa. 375, 72 A. 2d 96 (1950). Stated simply:

Where both husband and wife have the power to withdraw funds deposited in a joint account, the power must be exercised in good faith for the mutual benefit of both, and cannot be rightly exercised by the fraudulent withdrawal of the corpus of the funds for the exclusive use of one for the purpose of depriving the other of any use thereof or title thereto: Bearhalter v. Bearhalter, 315 Pa. at 228, 173 A. at 173.

Consequently, when the parties are unable to agree upon the use of the property, or one spouse excludes the other from the enjoyment of rights inherent in the estate, an accounting is in order and the property or proceeds divided equally between them: DeLuca v. DeLuca, 388 Pa. 167, 130 A. 2d 179 (1957); Lindenfelser v. Lindenfelser, 396 Pa. 530, 153 A. 2d 901 (1959).

The court in Bearhalter, supra, found a wife's actions of withdrawing $6000 from a joint checking account to open a new account in her own name, without her husband's knowledge or consent, was tantamount to an offer to destroy the entireties estate. "When the wife attempted to withdraw more than one-half of this fund, or any of it, from the bank and use it for her individual purposes, she violated the terms of the entirety agreement," Id. at 228, 173 A. at 173, and her husband's request for an accounting was an acceptance of the offer.

In a similar situation, a woman used over $15,000 from a joint bank account, a safe-deposit box, and bonds to open an account in her own name. The court concluded that she "had no right to use the property held by the entireties for her own separate purposes, and having done so, she is required to account therefore." Alcorn v. Alcorn, 364 Pa. at 379, 72 A. 2d at 98; Werle v. Werle, 332 Pa. 49, 1 A. 2d 244 (1938); Bearhalter, supra.

When determining whether an appropriation of funds was to the mutual benefit of both parties or to the wrongful exclusion of the innocent party, it was held that a wife's application of joint funds to the couple's children was *not* a misappropriation. However, her husband's appropriation of greater than $59,000 of joint funds, without any testimony as to its expenditure, *was* wrongful: Damirgian v. Damirgian, 262 Pa. Superior Ct. 463, 396 A. 2d 1263 (1978). Likewise, while the portion of bond proceeds used to finance the wedding of a couple's daughter was not a misappropriation as it was for the mutual benefit of both parties, the remaining unaccounted for portion was subject to an accounting and division: Reifschneider v. Reifschneider, 413 Pa. 342, 196 A. 2d 324 (1964).

In the present case, Mr. Mountz cashed jointly owned savings bonds valued at $1500-$2000, closed joint checking and savings accounts amounting to $2,210.64, and opened a checking account with the proceeds in his name only. (F.F. 30, 31). He did not give notice to his wife that he was appropriating these funds. We find that this appropriation was *not* for the mutual benefit of the parties, but rather for his sole use and enjoyment, and hence to the wrongful exclusion of Mrs. Mountz. Although he claimed to have used the proceeds to pay the debts from both entireties properties, defendant alone

made the mortgage interest payments and tax payments of the R. D. #1 home from the time the parties separated. Plaintiff admits to making no payments on the R. D. #1 property after the interest payment due on March 31, 1981. Plaintiff has made mortgage payments concerning the Linn Drive property, from which defendant has been excluded, amounting to 4500 each month.

A car registered only in a husband's name was not entireties property, and therefore was not amenable to an accounting: Alcorn v. Alcorn, supra. Likewise, stock owned by Mr. Mountz is not subject to an accounting, as it is held in his name only and is his personal property.

In Stemniski v. Stemniski, 403 Pa. 38, 169 A. 2d 51 (1961), although no direct evidence of bad faith was entered against the appropriating husband, his actions of closing three joint accounts and redeeming jointly held bonds in order to open accounts in his own name was clear proof of such bad faith. Similarly, the present plaintiff closed accounts and cashed in bonds constituting entireties property in order to open an account in his own name. He also had sole control over the safe-deposit box held by the parties. Defendant did not know what her husband did with the appropriated funds, but does know that she did not receive any of the proceeds.

## CONCLUSIONS OF LAW

1. Plaintiff voluntarily relinquished his ability to enter the marital home at R. D. #1, Boiling Springs, by voluntarily relinquishing his keys to the home.

2. Defendant did not misappropriate any of plaintiff's personal property.

3. Defendant did not wrongfully exclude plaintiff from his use and enjoyment of the marital home.

4. A partition of the marital home is not warranted.

5. Plaintiff's closing of joint bank accounts, cashing of jointly held bonds, and opening of an account in his own name with these funds was a misappropriation of the funds.

6. Plaintiff's misappropriation is tantamount to an offer to defendant to divide these entireties funds.

7. Defendant accepted the offer by seeking an accounting of the misappropriated funds.

8. An accounting of the funds, and a division of any misappropriated funds, is warranted.

9. Defendant is entitled to the following amounts: one-half of the amount of the $2000 savings bond, or $1000; one-half the amount of the joint savings account, or $422.75; and one-half the "previous balance" in the joint checking account, which disregards plaintiff's half of the income tax refund, or $134.83. Defendant is entitled to a total amount equalling $1,557.58.

## DECREE NISI

And now, July 23, 1982, the request of plaintiff to partition the real estate of the parties at R. D. #1, Boiling Springs, Cumberland County, Pa., is refused. Defendant has established her rights to an accounting and is entitled to $1,557.58.

Exceptions may be filed by either party to the decree nisi within ten days after notice by the prothonotary. If no exceptions are filed, upon praecipe, the prothonotary shall enter the decree nisi as the final decree.