## Blankley v. Blankley

*Martha B. Walker,* for plaintiff.
*Gary D. Wilt,* for defendant.

KELLER, *J.,* August 9, 1985—This action in divorce was commenced by the filing of a complaint on May 4, 1985, and service of the same upon defendant by the sheriff on May 16, 1985. The complaint in Count I alleged grounds for divorce under section 201(c) of the Divorce Code and in Count II on the grounds of indignities. Count III constituted a claim for equitable distribution and Count IV for counsel fees and expenses. Defendant's answer denied that the marriage was irretrievably broken; that plaintiff was the injured and innocent spouse or that defendant had offered indignities to her person, and opposed equitable distribution and the award of counsel fees and expenses; and it was filed May 6, 1985.

On April 17, 1985, plaintiff filed her petition for injunctive relief pursuant to section 403 of the Divorce Code alleging the ownership by the parties of real estate and certain personal property in Bethel Township, Fulton County, Pa.; the timbering and selling of timber from the real estate and the sale of farm equipment by defendant without the consent or authorization of plaintiff; that the disposition of the proceeds of the sales by defendant was unknown to plaintiff and plaintiff seeks to maintain the status quo and preserve the marital estate for ultimate disposition by the court without either party employing self help or otherwise destroying the marital estate in the assets of the parties. The petition also requested that defendant provide a complete accounting as to the sale of the marital assets subsequent to February 22, 1983, and the disposition of the proceeds. An order was signed on the same date setting May 21, 1985, at 1:30 p.m., for

hearing on the petition. On motion of counsel for defendant an order was entered May 17, 1985, rescheduling the hearing for June 4, 1985, at 1:30 p.m. The hearing was held as scheduled but not completed. The continued hearing was held on August 1, 1985. At the conclusion of the hearing the court invited counsel, but did not direct counsel for the parties to submit memoranda of law and proposal decrees by August 6, 1985.

The matter is now ripe for disposition.

## FINDINGS OF FACT

1. The parties own as tenants by the entireties three tracts of real estate in Bethel Township, Fulton County, Pa. of 176 acres, 45 acres, and 36 acres. The parties also own an undivided one-half interest in a 60 acre tract in Bethel Township. The remaining one-half interest in owned by defendant's brother.

2. The real estate owned by the parties is subject to a $57,000 mortgage, dated November 3, 1982, to the Federal Land Bank; and is recorded in Fulton County Mortgage Book Vol. 33, Page 23. The monthly installment payments due on the mortgage are approximately $757.30.

3. The 60 acre tract in which the parties own an undivided one-half interest is subject to a mortgage in the amount of $12,000 to the Fulton County National Bank, and is recorded in the Fulton County Mortgage Book Vol. 34, Page 107. The other mortgagors are Steven and Hilda Blankley and defendant testified that the payments on the mortgage are made by Steven Blankley.

4. Prior to the separation of the parties in 1983, they used their real estate as a working farm raising

cattle and hogs for sale. They raised grain and hay for the livestock on the farm.

5. The parties owned the necessary farm machinery and equipment for the operation of the farming business.

6. At the time of the separation of the parties they owned approximately 70 head of cattle and 50 to 60 hogs, four or five horses and the necessary feed grain and hay for the livestock.

7. In 1983 and 1984 defendant sold all of the hogs and all but seven or eight head of cattle, and all of the feed grain and hay was used as part of the customary farming operation of the parties. Defendant provided plaintiff with sales slips showing the sale of the livestock in 1983 and 1984, so she could prepare their joint income tax returns but she did not authorize the sale and the defendant did not account for the proceeds of the sales.

8. Defendant discontinued the farming operation in the fall of 1984 because he did not have the necessary operating funds and couldn't secure them.

9. The judgment docket in the Prothonotary's Office of Fulton County discloses the following judgments against the parties and constitute liens against their real estate:

No. 274 of 1983-C dated December 6, 1984 in favor of Maynard Wilkins in the amount of $3,183.77.

No. 123 of 1984 dated August 27, 1984 in favor of Harold Eskew in the amount of $15,623.79.

10. In 1984, defendant sold an M-Farmall Tractor to his brother-in-law for $950, and an H-Farmall Tractor to his brother for $500, and testified that he deposited the proceeds of the sales in the parties joint account and paid various bills with the funds.

11. In 1985, defendant sold:

(a) A trailer-type disk for about $1,500.

(b) A roller-harrow or cultipacker for about $1,600.

(c) A forage wagon for $950.

(d) A hay wagon for $800.

The checks for the sale of this equipment were made payable to defendant and Produce Credit Association and defendant testified they were delivered to Produce Credit Association to pay in full the joint obligation of the parties.

12. Plaintiff testified that the Production Credit Association is a lending company that makes small loans to farmers, and that she had joined in the obligation for $6,000 for fertilizer and other farm supplies. She knew the joint obligation had been paid off by the machinery sales.

13. Plaintiff approved of the liquidation of the Production Credit Association obligation but objected to not having been consulted by defendant before the sales were made, and because she has no assurance that all of the proceeds of the sales were applied to the Production Credit Association joint debt.

14. Defendant testified that he has paid down the Maynard Wilkins judgment against the parties to a little over $300. Plaintiff had no information as to what payments, if any, defendant had made on account of the judgment but did testify that no demand had been made upon her for payment.

15. At the request of the court counsel for the defendant stated on the record that the Eskew judgment was entered by default to No. 123 of 1983-C, and defendant filed a petition to open the judgment raising various defenses concerning defects in the merchandise and warranty issues; an answer was filed; depositions have been taken and the matter is now scheduled for argument before the court during the month of August 1985. Plaintiff was unaware of any defense being made to the Eskew

judgment but did hear some proceeding was pending.

16. At the time of the June 4th hearing the 1983 and 1984 real estate taxes on the parties' real estate had not been paid and liens had been entered against the property. At the time of the August 1st hearing plaintiff testified and defendant agreed that defendant had paid all of the 1983 real estate taxes except $75 and plaintiff had paid the remaining $75 to avoid having the real estate listed for tax sale. The 1984 taxes remain unpaid.

17. Plaintiff conceded that the cutting and sale of paper wood or pulp wood on their real estate was a normal part of the operation of the property to supplement the farm income, and on an average over the last five years they had grossed between $1,000 and $2,000 per year.

18. Defendant testified that the real estate he and plaintiff own has approximately 150 acres of woodland consisting of timber, i.e., large trees to be cut into logs and taken to sawmills for cutting into lumber and pulpwood or paperwood trees. Since January 1, 1985 he authorized the timbering of approximately 12,000 board feet off of three acres of their property, and received $960 from Mellott Lumber Company and he personally cut and logged timber from the property and received $1,611.88 for those logs, for a total income from the timber of $2,571.88. He testified that he applied the total proceeds to the Federal Land Bank mortgage and to other bills.

19. Defendant's brother testified that he observed during the months of April and May 1985, three or four tractor trailer loads of logs and four or five regular truckloads of logs (timber) being hauled from the parties' land. The timber was being hauled by Mellott Lumber Company.

20. Defendant testified that he also cut and sold paperwood from the real estate and then used the money to pay bills, purchase a power saw and maintain the equipment and pay operating expenses. He did not know how much money he had received for the sale of the pulpwood from the parties' property because he also had cut and sold pulpwood from other properties.

21. Defendant's brother testified that he observed defendant hauling paperwood from the parties' property every day for weeks, and one or two loads a day including Sundays. He was unable to estimate how much paperwood was removed in 1985, but believed defendant's truck would haul close to a cord to a cord-and-a-half of paperwood, and also believed it was selling at $42 per cord.

22. Defendant's brother testified that in some areas where defendant had cut pulpwood he left the tree tops laying on the ground and those tops have value as pulpwood or firewood, but if they are not removed and used soon they will be worthless.

23. Leaving pulpwood tree tops on the ground is an improper and wasteful procedure.

24. In the opinion of defendant's brother, there is less timber and pulpwood now on the parties' real estate than defendant cut and removed to date in 1985. The bulk of the timber and pulpwood was removed from the 36 acre and 45 acre tracts. In the brother's opinion approximately 95 acres of woodland described as having trees and brush on it remain and 15 to 20 acres have been cut.

25. Plaintiff objects to the timbering and extensive pulp wood cutting because she was not consulted about it, objects to the "denuding" of the farm; has no information as to the proceeds of the sale of the timber or pulpwood; and has no knowledge as to

the specific disposition of the proceeds of the sale of the same.

26. Plaintiff estimates the value of the tenancy by the entirety real estate as between $200,000 and $220,000. She acknowledges that timber on the real estate was not a "good stand," but believes the best has been cut and sold and it has destroyed the beauty of the real estate.

27. Defendant testified and plaintiff conceded that defendant had on numerous occasions proposed refinancing their obligations so that he could continue with the farming operation, but she refused to discuss the proposal because she does not approve of further borrowing to consolidate debts.

28. Early in June 1985 plaintiff received a notice from the Federal Land Bank that a $260 check issued by defendant to the bank had been returned marked NSF (not sufficient funds).

29. In July plaintiff received a letter from the branch manager of the Federal Land Bank Association of York dated July 15, 1985, and advising her inter alia:

"(a) That defendant had not paid several hundred dollars additional payments as he had promised on June 24th.

(b) That their account was seriously delinquent in the amount of $1,609.54, representing a balance remaining due from the month of May installment and total installments for June and July.

(c) That it was imperative that the delinquency be corrected by July 29.

(d) That if the balance due was not paid steps authorized by the loan instruments would be taken."

30. At the August 1, 1985 hearing defendant did not testify that he had made any payment on account of the delinquency or the August payment. He did testify that the balance due on the mortgage

was $50,726 which was the same balance due as of June 25, 1985, according to the mortgagees' statement of account introduced in evidence.

31. Defendant testified that since the parties' separation, he has made all of the payments that have been made on the Federal Land Bank mortgage.

32. Defendant testified he has paid about $3,000 on the principal mortgage debt and believed the arrearage on the mortgage to be as of the hearing date approximately $2,300.

33. Plaintiff has made no payments on account of the parties joint obligation with the exception of the $75 she paid on account of the 1983 real estate taxes.

34. The parties 1983 income tax return indicates the plaintiff was employed by the Department of Commerce of the Commonwealth of Pennsylvania, and had "wages, tips and other compensation" of $13,475.65 and "total Social Security wages" of $14,265.58. Federal Income Tax was withheld in the amount of $1,446.69. Schedule C of the 1983 return discloses a net profit to the defendant for carpentry in the amount of $831, and Schedule F shows a net loss to defendant from farming in the amount of $19,378.86, which included depreciation of $7,185.92.

35. The parties claimed a United States Income Tax refund for the tax year 1983 in the amount of $1,496.19. Defendant testified that he did not receive the refund.

36. The parties 1984 income tax return discloses that plaintiff had wages, tips and other compensation totalling $13,835.72 and total Social Security wages of $14,665.04 from the Department of Commerce of the Commonwealth of Pennsylvania and defendant had a total earned income of $8,142.77 from Control Erection Inc. and P&W Excavating

Inc. There was a farm loss of $12,902.03 for the year which included depreciation of $6,556.25.

37. The parties claimed a United States income tax refund of $2,092.62 and plaintiff testified that he did not receive or see the 1984 income tax refund.

38. Defendant is employed by Keane Construction Company of Germantown, Md. as a carpenter, and intends to continue his employment with that company.

39. Defendant estimated that he removed approximately 100 truckloads of pulpwood and was paid between $20 and $50 per load. He has receipts for all the pulp wood he sold but he is unable to determine how much he was paid for the pulpwood cut on the parties' land because those receipts are commingled with receipts for pulpwood he cut from other properties and sold.

40. Defendant conceded that up to the time of the separation the plaintiff had contributed her paycheck to the payment of the joint debts of the parties.

41. Defendant intends to sell other assets to pay the parties joint debts. He would like to sell the tractor and is asking $4,800 for it. He intends to make up the mortgage delinquency from the proceeds of the tractor sale if he can sell it.

42. Defendant intends to do more timbering on the parties' real estate, and if he has the time, intends to cut an additional 10,000 board feet of timber at $125 per thousand board feet.

43. Plaintiff opposes any further timber cutting and is in favor of selling a portion of the farm to liquidate the debts. Defendant refuses to consider any sale of the real estate.

44. Defendant is unwilling to have his attorney work with plaintiff's attorney to dispose of the par-

ties' assets and pay the joint obligations because he feels he can do that himself without paying an attorney.

45. Defendant testified that he was willing to give a detailed accounting of anything he sells, and would consult with plaintiff's attorney before making any sales if plaintiff will pay the telephone charges.

46. The tillable land of the parties has been put in hay. There has been one cutting of the hay and it is stored in the fields in rolls. Defendant's machinery was used for the mowing of the hay and another individual baled it for a percentage of the total crop. Defendant intends to sell the hay that's left but doesn't know how many rolls of hay there are or what it can be sold for. He estimated $10 per roll.

## DISCUSSION

The Pennsylvania Divorce Code, 23 P.S. §101 et seq. vests the court of common pleas with broad equitable powers to enforce the property rights of parties to a divorce proceeding. Section 401 provides inter alia:

"(c) In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interest of the parties or to effectuate the purposes of this act, and may grant such other relief or remedy as equity and justice require against either party or against any third party over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause."

Section 403 provides inter alia:

"(a) Where it appears to the court that a party is about to remove himself or herself for his or her property from the jurisdiction of the court or is

about to dispose of, alienate, or encumber property in order to defeat alimony pendente lite, alimony, child and spousal support, or similar award, an injunction may issue to prevent such removal or disposition and such property may be attached as provided by the Rules of Civil Procedure. The court may also issue a writ of ne exeat to preclude such removal."

Pa. R.C.P. 1920.43 provides inter alia:

"(a) At any time after the filing of a complaint, on petition setting forth facts entitling the party to relief, the court may, upon such terms and conditions as it deems just, including the filing of security,

(1) issue preliminary or special injunctions necessary to prevent the removal, disposition, alienation or encumbering of real or personal property in accordance with Rule 1531(a), (c), (d), and (e); or

(2) order the seizure or attachment of real or personal property; or

(3) grant other appropriate relief."

In Lazovitz v. Lazovitz 307 Pa. Super. 341, 453 A.2d 615 (1983), the Superior Court affirmed the injunction granted by the lower court prohibiting the defendant/husband from removing or alienating marital property. Judge Wickersham writing for the unanimous panel quoted with approval Singzon v. Commonwealth Department of Public Welfare, 496 Pa. 8, 436 A.2d 125 (1981):

"The standards of appellant review of the grant or denial of a preliminary injunction have often been reiterated by this court. The litany proceeds as follows:

As a preliminary consideration, we recognize that on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable

grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the Chancellor. . . . 'In order to sustain a preliminary injunction, the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury must be irreparable if the injunction is not granted.' " (Lazovitz at page 48).

In Holub v. Holub, 129 P.L.J. 366 the Allegheny County Court of Common Pleas found defendant/husband had removed and/or disposed of certain marital assets, and concluded from all of the facts and law that plaintiff/wife had a clear right to injunctive relief; an injunction was necessary to prevent irreparable harm and greater harm would have resulted from the denial than the grant of the injunctive relief (Holub at page 384).

In Beasley v. Beasley, 110 Montgomery County L.R. 1 (1981), the court required defendant/wife to return the furnishings and household goods she had removed from the marital home to that home. The court also observed:

"Under Pennsylvania case law, it is well established that personal property located in the marital domicile is presumed to be held jointly by the entireties. Di Florido v. Di Florido, 459 Pa. 641, 331 A.2d 174 (1978); Fascione v. Fascione, 272 Pa. Super. 530, 416 A.2d 1023 (1979). While they remain married, both husband and wife have the power to utilize or dissipate such property, so long as that power is exercised in good faith for the benefit of both parties. Shapiro v. Shapiro, 424 Pa. 120, 136, 224 A.2d 164 (1966), Damirgian v. Damirgian, 262 Pa. Super. 463, 396 A.2d 1263 (1978). Self help is not a permissible means of protecting one spouse's property interest in the marital context."

In Gacono v. Gacono, 69 Delaware County Reports, 587 (1982), the court found that defendant/wife had a marital property interest in certain property some of which had been removed, disposed, or alienated by plaintiff/husband. The husband was required to return certain funds; account for other funds and enjoined from alienating, transferring or otherwise disposing of any real or personal property in which the wife had a title or marital interest.

In the case at bar:

"1. The evidence clearly establishes that defendant has sold various pieces of farm equipment and truckloads of timber and pulpwood all for substantial sums of money and no contention has been made that equipment, timber or pulpwood were not property in which plaintiff had a marital interest.

2. Some unknown portion of the proceeds of the sales has been applied by defendant to joint debts of the parties, but clearly not all of the proceeds have been so applied.

3. Defendant has expressed his intention to sell additional farm machinery, additional timber and pulpwood, and the baled hay.

4. Defendant has not offered to account for the proceeds of the sale previously made or for those he proposes to make in the future.

5. The parties family farm is at risk due to the fact that no payments have been made on account of the substantial mortgage to the Federal Land Bank for the months of June, July and August and a partial payment remains due for the month of May all of this year."

In our judgment the rights of plaintiff in the marital property are clear. If defendant is not restrained from his plan to sell additional farm machinery, continue timbering and pulpwood cutting, and sell the

hay, we are satisfied that the value of the marital property will be diminished and there is no satisfactory evidence that plaintiff could be compensated by the defendant or from defendant's assets at some later date. Finally, we are persuaded that the refusal of injunctive relief would cause greater injury to plaintiff and perhaps to both parties than by granting it with appropriate conditions.

## ORDER OF COURT

Now, this August 9, 1985, it is ordered and decreed that:

1. Defendant, Kenneth J. Blankley, is enjoined from selling any farm machinery or equipment in which the plaintiff has a marital interest, and from cutting or authorizing the cutting and removal of timber or pulpwood from the parties jointly owned real estate. Provided, however, defendant may, with the written approval of plaintiff or her counsel of record, sell specific items of farm machinery and equipment or timber and pulpwood on the condition that:

"(a). The net proceeds of said sales were deposited in an escrow account in the names of counsel of record of the plaintiff and defendant who shall apply such proceeds to the parties joint obligations including their mortgage.

2. Defendant shall sell the hay previously baled and in the fields, and shall deposit the proceeds in the escrow account aforesaid for the use aforesaid.

3. Defendant may sell the pulpwood previously cut and on the ground, and the proceeds of such sale shall be deposited in the said escrow account for the said purposes.

4. On or before September 16, 1985, defendant shall file an accounting setting forth the sales of all

farm machinery and equipment, timber and pulpwood since January 1, 1985, and the disposition of the proceeds of such sales in the Office of the Prothonotary of Fulton County.

This order is entered without prejudice to either party to present his or her claim for ancillary relief in the divorce proceeding now pending.

This order shall remain in effect until equitable distribution of the marital property of the parties is concluded or a decree in divorce granted which includes an award of equitable distribution of the marital assets of the parties.

Exceptions are granted defendant.