## Vinocur *v.* Brummage Corporation (et al., Appellant).

Argued March 21, 1967. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*John L. Laubach, Jr.,* with him *Kenney, Stevens, Clark & Semple,* for appellant.

*Thomas M. Kerr, Jr.,* with him *Edward J. Mihalic,* for appellees.

138

OPINION BY MR. JUSTICE MUSMANNO, April 18, 1967:

David A. Vinocur, the plaintiff in this case, was the sole shareholder of The Brummage Corporation, which operated a private business school in Pittsburgh known as the Grace Martin School. On December 19, 1966, Vinocur filed a petition, on the equity side, in the court of common pleas, averring that the corporation was unable to meet its debts, that suits were pending against the corporation, and that if creditors were permitted to levy on the corporation's assets, the corporation would suffer irreparable loss. He prayed that an order be made to wind up the affairs of the corporation pursuant to the Act of May 5, 1933, P. L. 364, §1107, 15 P.S. §2852-1107, and that a receiver pendente lite be appointed.

The court appointed Hillard Kreimer receiver and empowered him to seize the assets of the corporation and continue the operation of the school for a reasonable time. The receiver immediately found a prospective purchaser in Duff's Business Institute which offered to purchase the assets and continue operation of the Grace Martin School. In the school, there were 87 students who had already paid their tuition. If the school disintegrated, they would have a claim for refund of their tuition fees. Duff's Institute offered to complete the education of these students at an estimated cost of $60,000. Under this offer, the students would not be required to pay any further tuition and, in addition, would receive a stenotype machine with their certificates of graduation. It appears that the machine went with the education. The stenotype machines, however, did not belong outrightly to The Brummage Corporation but were merely held on bailment lease. Duff offered to take over this liability, with all other liabilities, assume administration expenses of the receiver from December 19, 1966 and pay $1,000 to the receiver.

The receiver thereupon petitioned the court for permission to make the sale. On December 22, 1966, the court set December 30, 1966, as the date for confirmation of the private sale petitioned for by the receiver and for the purpose of receiving any higher or better offer, the receiver to give notice of the hearing to all creditors and to advertise the hearing in accordance with court order.

On December 30, 1966, R. L. Brummage, creditor, objected to the sale to Duff's stating that insufficient opportunity had been allowed to permit other prospective purchasers to make intelligent bids and requesting that the sale be postponed. The receiver replied that he had no funds with which to pay salaries, rents or other expenses of administration. The school was due to reopen after the Christmas vacations on January 3, 1967. Immediate action was imperative if the entire school enterprise was not to be ensnarled in extended litigation over equipment, property and tuition. No other bid was made on December 30, 1966, and the court accordingly confirmed absolutely the sale of the Grace Martin School to Duff's Business Institute.

R. L. Brummage appeals, arguing that the students were given a preference over other creditors. The students were indeed creditors but they were the very stuff of the enterprise. A school cannot operate without students any more than a flour mill can operate without wheat. Time here was of the essence. The school could not reopen on January 3, 1967 without a sale being effected because, as indicated, the receiver was without funds with which to operate the establishment. Without the sale, the Grace Martin School would have been a school with empty seats, an empty treasury and a vacant future. If the ship of the enterprise was not to sink beneath the waters of bankruptcy into the mud of inextricable insolvency, immediate action was needed. The appellant argues there should have been

a delay, but the delay would have meant waiting for phantoms because there was not the slightest suggestion on the horizon of any rescuers except the Duff's Business Institute.

To begin with, there is even a question as to whether the appellant is an "aggrieved" person under the Act of April 21, 1846, P. L. 432, §3, 12 P.S. §1092, since he was not a party to the action in the involuntary dissolution proceeding, nor did he submit, in the original proceedings, a formal creditor's claim. It can also be questioned as to whether he is justiciably "aggrieved" by the order of the court since he cannot demonstrate how his loss, if any, was predicated upon the deprivation of some legal right appertaining particularly to him, especially since the assets of the school were sold to the only purchaser that made itself seen or heard. The appellant cannot show, nor did he make any effort to show, that the corporation suffered because of the sale to Duff's. The appellee submits to this Court that the appellant is not even in a position to deny the receiver the authority to sell since he did not raise any such contention in the Court below.

However, we find no necessity to pass upon these questions because it is clear from the record that the court below properly confirmed the sale to Duff's. These proceedings are in equity and the chancellor was confronted with a situation which required the application of equitable principles undeterred by abstract technicalities and didactic argument. The speedy sale to Duff's assured the students at the Grace Martin School a continuing education; it cut the Gordian knot of multitudinous claims over the school's assets. Among the many items to be considered were the stenotype machines (book valued at $16,582.64); the furniture and equipment (book valued at $7,143.95), the leasehold improvements (book valued at $18,675.79).

Had the school closed, a tangled skein of legal complexities would have arisen between the corporation and the students over rights to the stenotype machines, conflicts would have followed between the corporation and its equipment suppliers regarding rights to school equipment; controversies would have been inevitable between the corporation and the landlord as to the assets on the school premises.

Little as the appellant believes he may have received from the proceedings initiated by the plaintiff, it is not apparent how he would have stood to receive much more if the action taken by the receiver had not been confirmed by the court. Nor is it clear that any of the creditors could have gained more from a sunken ship than one now afloat and on its way.

We are satisfied that the chancellor in no way abused his discretion (31 P.L.E. Receivers, §17). The problems presented to the chancellor were solved in full accord with equitable principles and in a way that has benefited the general public and the community in its ever-continuing need of increased facilities for those seeking an education. (*Shapiro v. Shapiro,* 424 Pa. 120)

Finally, with regard to the number of days notice of sale, this, in the absence of statutory regulation, is a matter within the discretion of the chancellor. In view of the extraordinary circumstances already outlined, it cannot be said that five days of duly advertised notice was inadequate to preserve the inherent rights of all parties concerned. It is to be repeated that no higher or better offer was tendered than that submitted by Duff's, and the chancellor was not only justified, but equity and justice compelled his confirmation of the sale.

Order affirmed; each party to bear own costs.

Mr. Justice COHEN dissents.