**Clapper v. Clapper**

468

*Daniel W. Rullo*, for plaintiff.
*Joseph N. Cascio*, for defendant.

COFFROTH, *J.*, October 20, 1982—This divorce case is before us on Count III of plaintiff wife's complaint in divorce seeking an equitable distribution of marital property under §401(d) of the Divorce Code, Count IV of the complaint seeking alimony under Code §501(a), and Count V of the complaint seeking counsel fees. A final decree in divorce has been made under §201(d)(1) on the ground of an irretrievably broken marriage after undenied separation for at least three years; the counts of the complaint now before the court were reserved for later adjudication. No answer was filed to the complaint and defendant makes no challenge to the propriety of the present proceeding.

A. Issues:

1. General claims:

a. Plaintiff claims an equal share of marital property, an award of alimony of $500 monthly for life, and an order for payment by defendant of plaintiff's counsel fees of $5,000.

b. Defendant claims 60 percent of the marital property (or 50 percent thereof on certain conditions), argues for no alimony (or at most $300 monthly for 24 months, on conditions) and for no award of counsel fees to either party.

2. Marital v. nonmarital property:

a. Plaintiff lists as marital property: (i) proceeds from sale of airplane hangar ($6,009) and from sale of airport stock ($4,636.31). Defendant contends those items were sold November 16, 1978, prior to commencement of divorce proceedings in 1981 and fall within the exception of Code §401(e)(5) as property disposed of.

b. Plaintiff claims the increase in value of gifts to defendant by inheritance from his parents calculated as interest at 6 percent per annum from the date of defendant's receipt thereof from the estate, under Code §401(e)(3). Defendant argues that the property was inherited after separation under §401(e)(4) and that the increase in value contemplated by Code §401(e)(3) refers to market value of property, not interest on money.

c. Plaintiff contends that the cash value of life insurance policies is marital property, whereas defendant contends the contrary and that the court's power over such policies is limited to that granted in §401(i).

d. Plaintiff claims as marital property a jointly owned unimproved parcel of land (7.8 acres). Defendant contends it is not marital property (except for increase in value during marriage) under

§401(e)(3) because it was given to him by his parents in 1971, and later in 1973 conveyed by him to the parties jointly because of the financial condition of their business.

B. Relevant Factors:

The prime relevant factors in determining an equitable division of marital property are set forth in Code §401(d) which provides as follows:

"(d) In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign the marital property between the parties without regard to marital misconduct in such proportions as the court deems just after considering all relevant factors including: . . . [then follow the ten factors numbered (1) through (10) hereinafter quoted in similarly numbered subparagraphs of this Part of the Opinion]."

(1) "The length of the marriage."

The parties were married for over 35 years (1946-1982). They were married on October 6, 1946, finally separated on December 22, 1977, and divorced June 25, 1982.

(2) "Any prior marriage of either party." None.

(3) "The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties."

a. Age: Plaintiff is 58 years old, born September 29, 1924. Defendant is 56 years old, born May 12, 1926.

b. Health: Plaintiff's health is good, except for high blood pressure well controlled by medication. Defendant's health is satisfactory, except that he had a heart attack on August 1, 1981, for which he was hospitalized for 14 days (6 or 7 days in critical care), was disabled from working until mid-

October, 1981, later returned to work on a limited basis, is now working full time, and is under regular medical care and heart medication.

c. Station (education, employment and marital history): Plaintiff is a high school graduate and attended business school in secretarial courses for two years; defendant is a high school graduate and attended college for one year. The parties met in 1945, while both served in the armed forces, were married in 1946, and established their marital home in Meyersdale, this county, where defendant lived and his family had a lumber business.

Defendant worked in the family business until 1956; during those years plaintiff worked as a part-time grocery clerk, and was a homemaker. The parties are parents of a daughter born in 1948, and a daughter adopted in 1955 at the age of 2 years.

In 1956, the parties established their own business (Clapper Manufacturing Company) in Meyersdale, of which defendant was the manager and in which plaintiff also was an officer and clerical employee; the business began with 4 or 5 employees and grew to 150 employees. By 1972, the business had outgrown the parties' ability to capitalize it, went into receivership and failed less than a year later. Thereafter, the parties suffered emotionally, the marriage began to deteriorate and the parties moved to or near Baltimore, Maryland, working for a church group to which they had volunteered a year's service. That association placed defendant into a job at Johns Hopkins University.

At the end of the church service year, plaintiff at defendant's insistence returned to the parties' home in Meyersdale, defendant remaining in Maryland where he still works and resides. The parties saw each other on weekends for a while,

which tapered off into final separation on December 22, 1977. During this period, defendant paid the expenses of the home; in addition he paid to plaintiff $60 a week for her maintenance until she became gainfully employed. Plaintiff then worked for an accountant, a car agency, and the County of Somerset, successively, earning $7,000 - $8,000 annually. In the fall of 1981, she left the Meyersdale home and moved to Meadville, Pa., where a daughter resides; she is now employed as office manager in Meadville for a nursing home and does tax returns and sewing for extra income.

The two children of the parties are matured and self-supporting. The parties both worked hard in the family business while it operated, and they lived comfortably during those years. They were well known and of good standing in their community.

d. Amount and sources of income: Plaintiff presently earns approximately $10,000 annually ($571.96 take-home each two weeks) from her regular employment and approximately $200 per month from her other work. Defendant's present salary is $32,259 annually ($1,518 monthly take-home); $245 is deducted from each pay for a tax exempt annuity beginning April, 1982. Plaintiff's employment is regular and secure. Defendant's employment is regular but depends upon federal funding whose continuance is problematical today; he is not a tenured employee.

e. Vocational skills: See above paragraphs.

f. Employability: See above paragraphs.

g. Estate: Plaintiff's inventory and appraisal of marital property shows a total value of $336,745.16; all nonmarital property listed belongs to defendant having an approximate value of $40,000. Defendant's data places the marital prop-

erty at approximately $280,000 and nonmarital property (all belonging to defendant) at approximately $51,000.

h. Liabilities: Plaintiff lists a liability for counsel fees of $5,000.

i. Needs of the parties: Plaintiff lists monthly living expense as $749.25. Defendant shows his living expense as $1,518.16 monthly, income taxes and maintenance of the Meyersdale home at an additional $1,766.78 monthly.

(4) "The contribution by one party to the education, training, or increased earning power of the other party." None.

(5) "The opportunity for each party for future acquisition of capital assets and income."

As to future acquisitions of capital assets, none established or apparent for either party. As to future income, plaintiff's income from employment should continue, plus earnings from her share of marital property. Defendant's future earnings and employability depend on his ability to continue in his present employment whose duration is uncertain, and his employability thereafter is minimal because of his physical condition and age.

(6) "The sources of income of both parties included but not limited to medical, retirement, insurance or other benefits."

See previous paragraphs.

(7) "The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker."

Both parties have worked hard all their lives. Both have contributed their full time, effort and earnings to the family, plaintiff as mother, and homemaker and employee in the family business, defendant as father and business manager. The

acquisition of the marital property resulted from those activities, aided by gifts from defendant's parents.

(8) "The value of the property set apart to each party."

This adjudication sets apart no specific property and establishes no valuations, but each party should receive marital property in excess of $125,000 and defendant will retain nonmarital property valued at $40,000-$50,000, see paragraph (3)g supra.

(9) "The standard of living of the parties established during the marriage."

The parties had a conservative but comfortable middle-class standard of living. Separation and business reverses have somewhat diminished that standard.

(10) "The economic circumstances of each party at the time the division of property becomes effective."

See previous paragraphs.

C. Marital property:

1. The proceeds from the sale of the airplane hangar and airport stock are not marital property, having been "sold . . . in good faith and for value prior to the time proceedings for divorce are commenced." Code §401(e)(5).

2. Defendant's gift by inheritance vested on the death of his mother prior to the final separation of the parties on December 22, 1977; therefore the provisions of §401(e)(4) excepting from marital property "property acquired after separation until the date of divorce" are inapplicable notwithstanding actual receipt of distribution thereof after separation of the parties. Code §401(e)(3) is applicable, excepting from marital property "prop-

erty acquired by gift, bequest, devise or descent except for the increase in value during the marriage"; but the "value" referred to is the market value of property other than money and cannot include an award of interest on money gifts; insofar as interest actually earned during marriage and before separation is concerned, such earnings like all other earnings have become marital property in some other form or have been expended. Hence, plaintiff's claim for such interest is not marital property.

3. The cash value of life insurance policies of a party, whenever acquired, accruing during the marriage until the date of final separation, is marital property. Accord: Farrell v. Farrell, 41 Somerset L. J. 201, (1981) (Shaulis, J.). Such cash value is "property acquired by either party during the marriage" as provided in §401(e), the portion thereof accruing after final separation falls within the exception of §401(e)(4), and §401(i) cited by defendant relates only to the manner of distribution of the policy and does not define marital or nonmarital property.

4. The unimproved 7.8 acre parcel conveyed to defendant by his parents as a gift in 1971 (during marriage), and by him to plaintiff and himself by the entireties in 1973, presents a problem under the wording of the Code, as to whether it is to be treated as marital property or as excepted from marital property as a gift under §401(e)(3). Leaving the Divorce Code aside for the moment, the general law of Pennsylvania would require us to conclude that: (a) the land was a gift in 1971 to defendant only, (b) in 1972 it was a gift by defendant to plaintiff and defendant equally by the entireties, see Shapiro v. Shapiro, 424 Pa. 120 (1966) and Butler v. Butler, 464 Pa. 522, 527 (1975), and (c) the decree of di-

vorce converted the entireties estate to an equal tenancy in common under the Act of 1927, P.L. 884 §1, 68 P.S. §501, see Butler supra 526. This divorce action having been brought in 1981 under the Divorce Code subjected the tenancy by the entireties (and the tenancy in common to which it was later converted) to Code §401 (equitable distribution). Since the joint ownership of the parties was created by way of gift, the property would seem to be excepted from marital property under §401(e)(3) as "property acquired by gift . . . except for the increase during the marriage." But we do not think it is the intent of the statute to except from marital property any property jointly owned by the parties, even though acquired by them as a gift whether from a third party or inter se. We construe §401(e)(3) as inapplicable to a gift to spouses jointly, only to a gift to one of the spouses, and to be read as follows:

"(3) Property acquired *by one party* by gift . . . [etc.]" Emphasize words added.

While the extent of a spouse's contribution to marital property is a factor to be considered in equitable distribution under §401(d)(7), it is not and should not be a criterion for determining whether particular property is marital property. There remains, however, the question whether we should look through the entireties conveyance to the original deed of gift to defendant alone by his parents as the essence of the transaction in the search for "economic justice between the parties" as mandated by Code §102(a)(6), by *tracing* the origin of the introduction of the property into the marriage. Such an approach seems consistent with the spirit and purpose of §401(e)(3) supra to preserve to a party his or her prior individual acquisitions. That approach is also consistent with the

underlying theory of §401(e)(1) excepting from marital property:

"(1) Property acquired in exchange for property acquired prior to the marriage except for the increase in value during the marriage."

That subsection, although not directly applicable here, incorporates the notion of preserving the character of a party's individual acquisitions by tracing the property into other property into which it was converted by exchange. A closely related situation was presented in Johnson v. Johnson, 22 D. & C. 3d 97 (1981); there the parties purchased a home in joint ownership for $32,000, of which $6,500 was traced to the wife's premarital inheritance. The court rejected "the traceable assets approach" (104), and also rejected "the gift law approach" (105) under which the $6,500 would be viewed as a gift and that amount divided equally in distribution. Then the court said (105):

"A third and more tenable approach is to view the placing of the marital home in joint names as a gift to the marital entity."

On this theory, the court treated the home as marital property subject to equitable distribution under the Code. The court stressed, however, that the property in question was the marital home, jointly used and occupied, as follows (107):

"Concluding that placing the marital home in joint names creates a gift to the marital estate effects most closely the intent of the parties when they purchased their home as a family abode. . . . "

The court also said (106-107):

"Wedding gifts and the marital home occupy a similar position among the assets of a married couple. Wedding gifts are given to help provide a

couple with the means to establish their own living unit. The gifts are given only because the couple are marrying. They are given for the joint enjoyment of both spouses. Similarly, the house a couple purchases to live in is purchased to provide a home for the marital entity, both spouses and children."[1]

The court then pointed out that equity could be accomplished by some distribution other than equal, according to the circumstances of the case. This is specifically provided for in such a case in §401(d)(7) above referred to. It does not necessarily follow from the foregoing that the Johnson court would treat the instant parcel of land as marital property, since it is not so intimately connected with marital use as are the marital dwelling and wedding gifts. But as we read Johnson, such use merely demonstrates the *intent* of the joint ac-

---

1. The following statement appears in Perlberger, Pennsylvania Divorce Code (Bisel 1980) §5.3.1(b)(3):

"It is not clear what happens if a gift is made to the couple on their wedding day or during marriage by one of the parties' parents or blood relatives. Is the gift intended to be made to the marital unit and, therefore joint in its character, *or* should the Court consider the side of the family making the gift as an implied expression that, upon separation or divorce, the gift should stay in the 'family?' The general rule should be that such a gift is jointly made; but, facts may exist that would lead to a contrary conclusion (e.g., a gift made just before a separation occurs; or, proof exists that the gift was made while the other spouse was engaged in clandestine misconduct ultimately leading to the parties' separation). Whether the legislative intent that distribution occur without regard to marital misconduct will preclude these 'equitable' considerations remains to be seen.

"Finally, it would seem that gifts between spouses may not be distributed if they were designed to be used exclusively by one spouse (e.g., a mink coat, a ring or a briefcase for the office)."

quisition to make a gift to the marital estate, which can be manifested in a variety of situations. In the instant case, the very fact that defendant transferred his separate property to joint ownership is of itself a strong, perhaps not conclusive, indication of his purpose to make a gift to the marital estate. The facts that this property was given to him initially as a location for the business, and that the purpose of the joint deed was to save the property from loss to creditors of the business which was then failing, are relevant factors; but in light of the further fact that the business itself was marital enterprise supports the conclusion that the intent of the joint deed was a gift to the marital entity. We conclude that this asset is marital property, but that in light of its origin and history, economic justice requires that a substantially larger share thereof should go to defendant as the original donee; a factor in this conclusion is that its value ($25,000 or less) is not so large relative to the whole marital estate as to deprive plaintiff of a substantial award for her future needs. As stated in Johnson, supra, 102-103:

"The Code is title blind, and all property is presumed to be marital, except for certain carved-out exceptions."[2]

That quoted statement is an accurate summary of Code §401(f).

D.  Conclusions:

---

2.  On the code's effect in a spouse's action for partition of jointly owned property, while a divorce action is pending, see: Strock v. Strock, 22 D. & C. 3d 118 (1982); Zeigler v. Zeigler, 22 D. & C. 3d 225 (1982); Gill v. Gill, 30 Chester 338 (1982); Willow v. Willow, 65 Erie 156 (1982); contra, Daniels v. Daniels, 19 D. & C. 3d 36 (1981).

Economic justice in this case requires that, except for the unimproved parcel of land, the marital property be divided equally between the parties, without alimony or allowance of counsel fees.

This result will:

a. Give full recognition to the fact that the marital property has been accumulated during a marriage of more than 31 years as a shared enterprise; and

b. " . . . equitably divide . . . the marital property between the parties without regard to marital misconduct. . . . after considering all relevant factors. . . . " as provided in §401(d); and

c. Comply with §501(a) which authorizes the court to "allow alimony, as it deems reasonable, to either party, only if it finds that the party seeking alimony: (1) lacks sufficient property, including but not limited to any property distributed pursuant to Chapter 4, to provide for his or her reasonable needs; and (2) is unable to support himself or herself through appropriate employment," and

d. Appropriately considers §502 authorizing the court "in proper cases, to allow a spouse. . . . reasonable counsel fees and expenses."

## ORDER

Now, October 20, 1982, it is hereby ordered and decreed that the marital property shall be divided equally between the parties, except that plaintiff shall receive a one-fourth share in the 7.8 acre parcel of unimproved land and defendant shall receive a three-fourth share therein, plaintiff's claim for alimony and counsel fees is denied, costs on defendant, subject to such further adjudication by the court or a master on petition of either party as may be necessary or appropriate to carry out this order.